**Katherine CLINTON, Appellant,**

**v.**

**The STATE of Texas.**

**No. PD–0119–11.**

Court of Criminal Appeals of Texas.

Dec. 14, 2011.

---

Tim Cone, Gilmer, for Appellant.

Chrristie M. Martin, Asst. D.A., Gilmer, Lisa C. McMinn, State's Attorney, Austin, for State.

### *OPINION*

ALCALA, J., delivered the opinion of the Court, in which KELLER, P.J., MEYERS, WOMACK, JOHNSON, KEASLER, HERVEY, and COCHRAN, JJ., joined.

A jury convicted appellant, Katherine Clinton, for the state-jail felony of debit card abuse. *See* TEX. PEN.CODE § 32.31(b)(1). The court of appeals reversed appellant's conviction for insufficient evidence and reformed the judgment to reflect a conviction for the lesser-included offense of attempted debit card abuse.

*Clinton v. State,* 327 S.W.3d 366 (Tex. App.-Texarkana 2010). The Court determined that the State failed to prove that appellant "used" the debit card. *Id.*

The State and appellant each filed petitions for discretionary review. The State's petition asks whether the terms "use" and "present" in the debit-card-abuse statute are mutually exclusive so that there is no overlap in the meaning of the words. The State contends that the court of appeals erred by finding that appellant's presentation of the debit card failed to prove that she "used" the debit card and by requiring that "use" of a debit card include proof of consummation of the transaction. Appellant responds that the court of appeals properly determined that the evidence is legally insufficient to prove "use" of a debit card because "use" of a card, unlike presentation of a card, requires proof that the transaction was successfully completed. Appellant's petition inquires whether a court of appeals has the authority to reform a judgment to reflect a conviction for a lesser-included offense when the lesser-included-offense instruction was not in the jury charge and the request for the lesser instruction was not preserved for appeal.

Based on the ordinary meaning of the words as used in the statute, we conclude that the statutory terms "use" and "present" may overlap in meaning, that a transaction need not be consummated to support a jury finding that a defendant used a debit card, and that the court of appeals erred by determining that the evidence is insufficient to establish debit card abuse. Because we reinstate the trial court's judgment, we conclude that appellant's petition regarding the reformation of the judgment was improvidently granted.

## I. Background

Steven Hubbard's vehicle was burglarized, resulting in the loss of his debit card, among other items. Later that day, appellant received the card from another individual, whom she knew was not the owner. To purchase cigarettes, appellant swiped the stolen debit card through a card reader at a Wal–Mart. The store declined the card, did not debit Hubbard's account, and did not permit appellant to obtain the cigarettes.

The State charged appellant with debit card abuse by indictment, which alleged that she

> did then and there with intent to fraudulently obtain a benefit, use a debit card, namely, a First National Bank debit card, with knowledge that the card had not been issued to the said defendant, and with knowledge that said card was not used with the effective consent of the cardholder, namely, S. Hubbard.

*See* TEX. PEN.CODE § 32.31(b)(1). Consistent with this indictment, the jury charge required the State to prove that appellant "used" the debit card. The jury found appellant guilty.

In her direct appeal, appellant argued that the State presented insufficient evidence to prove debit card abuse, and the court of appeals agreed. *Clinton,* 327 S.W.3d at 370. According to appellant, failure to complete the transaction and obtain a benefit means she presented the credit card, but did not use it. *Id.* The court of appeals analyzed the definitions of "use" and "present" and concluded that appellant's actions were not covered by the definition of "use." *Id.* (citing TEX. GOV'T CODE § 311.021(2)). According to the court of appeals, interpreting "use" to include appellant's actions renders the word meaningless in the statute, as "use" and "present" would then overlap in meaning. The court of appeals stated, "If 'uses' is interpreted broadly enough to cover what Clinton has been proven to have commit-

ted, the Texas Legislature would have had no purpose for including, in the statute, the word 'presents' in addition to the word 'uses.' " *Id.* Based on the structure of the statute and the dictionary definition, the court of appeals held that "present" means "to tender [a] debit or credit card" and that "use" means "to employ [a] card in any other manner including, but not limited to, successfully completing a transaction." *Id.* (quoting RANDOM HOUSE WEBSTER'S UNABRIDGED DICTIONARY 1529, 2097 (2d. ed.2001)). Because the evidence against appellant did not support a conviction under these definitions, the court of appeals determined the evidence was legally insufficient to support a jury finding that the defendant "used" the debit card, reformed appellant's judgment to reflect a conviction on the lesser-included offense of attempted debit card abuse, and remanded the case for a new punishment hearing. *Id.* at 372.

## II. Analysis

▮▮▮ To determine whether the court of appeals properly analyzed the legal sufficiency of the evidence, we must conduct two steps. First, we must determine "the essential elements of the crime" for which the prosecution must provide sufficient evidence to support a conviction. *Geick v. State*, 349 S.W.3d 542, 545 (Tex.Crim.App. 2011) (not yet reported). Second, we conduct a sufficiency review by examining all of the evidence in the record in the light most favorable to verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See id.; see also Jackson v. Virginia*, 443 U.S. 307, 318, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). We conduct a de novo review of statutory interpretation. *Williams v. State*, 253 S.W.3d 673, 677 (Tex.Crim.App.2008).

### A. Essential Elements of Crime

▮▮▮ To identify "the essential elements of the crime," we look to "the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim.App.1997). A hypothetically correct jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.* This list is "not necessarily exhaustive." *Curry v. State*, 30 S.W.3d 394, 404 (Tex.Crim. App.2000). The law as authorized by the indictment consists of "the statutory elements of the offense ... as modified by the charging instrument." *Id.* "[W]hen the statute defines alternative methods of manner and means of committing an element and the indictment alleges only one of those methods, 'the law' for purposes of the hypothetically correct charge[ ] is the single method alleged in the indictment." *Gollihar v. State*, 46 S.W.3d 243, 254 (Tex. Crim.App.2001).

▮▮▮ The penal code provides that a person may be guilty of debit card abuse either by using it or presenting it. *See* TEX. PEN.CODE § 32.31(b)(1). But because the indictment limits the manner and means of committing debit card abuse to only "use," the State must prove that the appellant used the debit card for the evidence to be sufficient. *See id; Curry*, 30 S.W.3d at 404 (holding that sufficiency of evidence must be weighed against "manner and means of abduction" alleged in indictment); *see also Gollihar*, 46 S.W.3d at 254 (stating that law authorized by indictment is limited to "the single method alleged in the indictment").

### B. Sufficiency Review

Because the State must prove "use" of the debit card for the evidence to be legal-

ly sufficient, we must define "use" before reviewing the evidence.

### 1. Applicable Law for Interpreting a Statute

 When interpreting statutory language, we focus on the " 'collective' intent or purpose of the legislators who enacted the legislation." *Boykin v. State*, 818 S.W.2d 782, 785 (Tex.Crim.App.1991). To determine the collective intent of the Legislature, we look first to the literal text. *Id.* This provides the best means to determine "the fair, objective meaning of that text at the time of its enactment." *Id.*

 We construe a statute according to its plain meaning without considering extratextual factors unless the statutory language is ambiguous or imposing the plain meaning would cause an absurd result. *See id.* at 785–86.[1] To determine the plain meaning of a statute, we apply the canons of construction. *Rushing v. State*, 353 S.W.3d. 863, 865 (Tex.Crim.App.2011) (not yet reported). Among the canons of construction is a list of presumptions regarding legislative intent. *See* Tex. Gov't Code § 311.021. Under these canons, in the Legislature's enactment of a statute, it is presumed that (1) compliance with the constitutions of this state and the United States is intended; (2) the entire statute is intended to be effective; (3) a just and reasonable result is intended; (4) a result feasible of execution is intended; and (5) public interest is favored over any private interest. *Id.*

### 2. Analysis of Plain Meaning of Statute

 The statutory text provides that a person commits debit card abuse if he presents or uses a debit card with intent to obtain a benefit fraudulently and with knowledge that the card, whether or not expired, has not been issued to him and is not used with the effective consent of the cardholder. Tex. Pen.Code § 32.31(b)(1). Because the penal code does not define the words "presents" or "uses" for the debit-card-abuse offense, we must determine what those words mean under this statute. *See id.* When analyzing the sufficiency of the evidence, undefined statutory terms "are to be understood as ordinary usage allows, and jurors may thus freely read statutory language to have any meaning which is acceptable in common parlance." *Vernon v. State*, 841 S.W.2d 407, 409 (Tex.Crim.App.1992). But if those statutory terms have a technical meaning, they will be construed consistent with that technical meaning. *See Medford v. State*, 13 S.W.3d 769, 771–72 (Tex.Crim. App.2000).

 When determining the fair, objective meaning of an undefined statutory term, our Court may consult standard dictionaries. *Ramos v. State*, 303 S.W.3d 302, 306 (Tex.Crim.App.2009). The verb "present" can be defined several ways, but the most relevant definition states that to "present" means "to bring or present in the presence of someone." Webster's Third New International Dictionary 1793.[2] The word, as commonly used, pre-

---

1. *See* Tex. Gov't Code § 311.023. Extratextual factors include consideration by a court of (1) the object sought to be attained by the statute; (2) the circumstances under which the statute was enacted; (3) the legislative history; (4) the common law or former statutory provisions, including laws on the same or similar subjects; (5) the consequences of a particular construction; (6) the administrative construction of the statute; and (7) the title (caption), preamble, and emergency provision. *Id.*

2. We cite Webster's Third New International Dictionary because we have used it to define the term "use" for other offenses in the penal code. *See Patterson v. State*, 769 S.W.2d 938, 940 (Tex.Crim.App.1989) (defining "use" in

sumes that the action will be done to or for another individual, who indirectly receives the action. *See id.* By applying this definition to the word "presents" as used in the debit-card statute, we conclude that the defendant must physically show or provide the card to an individual or for another individual, such as swiping a card for a store clerk, but presentment does not require any subsequent result, such as the consummation of the transaction.[3]

■■■■ The word "use" is likewise susceptible to multiple interpretations. For example, Webster's Dictionary provides that to "use" can mean to carry out a purpose or action by means; to make instrumental to an end or process; to apply to advantage; to turn to account; to utilize. *Id.* at 2524. That dictionary also provides the synonyms "employ, utilize, apply, [and] avail," and it notes that the word "use" is "general and indicates any putting to service of a thing, [usually] for an intended or fit purpose or person." *Id.* Unlike "present," the word "use" does not require the presence of another individual to receive the action; however, the definition does not necessarily preclude another individual's presence either. By applying Webster's definition to the word "uses" to interpret the meaning of the word in the debit-card statute, we determine that the defendant must employ, utilize, or place the card into service in or out of the presence of another individual, but it does not require any subsequent action such as consummation of action.[4] We conclude that the plain meaning of the words "uses" and "presents" includes some overlap in meaning such that someone can, with the same conduct, both use and present a credit card, and that neither word requires consummation of the transaction.

In applying the pertinent canons of construction, we must presume the Legislature intended for the entire statute to be effective and to produce a just and reasonable result. *See* TEX. GOV'T CODE § 311.021. But the definitions proposed by the court of appeals are contrary to these canons. The court of appeals's conclusion that the definition of "use" in the statute requires consummation of the transaction reads an additional requirement not found in the statute. *See* TEX. PEN.CODE § 32.31(b)(1). Furthermore, a plain reading of the statute, which permits prosecution for the use or presentment of a debit card that "has expired or has been revoked or cancelled," suggests that consummation is not required because it would be highly

deadly-weapon statute). Although this court does not consistently reference a particular dictionary when determining the ordinary meaning of statutory terms, this dictionary is among the most commonly used. *See, e.g., State v. Dobbs,* 323 S.W.3d 184, 189 n. 14 (Tex.Crim.App.2010).

3. The Court applied a similar definition of "present" when it determined what is required to "present" a motion for new trial to a court. *See Carranza v. State,* 960 S.W.2d 76, 79 (Tex.Crim.App.1998) (stating that "the term 'present' as used in Rule 31(c)(1) [of the Texas Rules of Appellate Procedure] means the record must show the movant for a new trial sustained the burden of actually delivering the motion for new trial to the trial court

or otherwise bringing the motion to the attention or actual notice of the trial court.").

4. Our interpretation of "use" in this context comports with the definition of "use" we employ in other contexts. *See Patterson,* 769 S.W.2d at 940 (defining "use" in deadly-weapon statute as "any employment of a deadly weapon, even its simple possession, if such possession facilitates the associated felony"). We have stated that the term "use" in the deadly-weapon statute should be interpreted to have "the broadest possible understanding in context of which it [is] reasonably susceptible in ordinary English." *Tyra v. State,* 897 S.W.2d 796, 797 (Tex.Crim.App. 1995) (citing *Vernon v. State,* 841 S.W.2d 407, 409–10 (Tex.Crim.App.1992)).

unlikely that an individual could consummate a transaction with an expired, revoked, or cancelled card. *See* Tex. Pen. Code § 32.31(b)(1)(B). Presuming the Legislature intended for the entire statute to be effective and a just and reasonable result, a plain reading of the statute suggests that consummation of the transaction is not required. *See* Tex. Gov't Code § 311.021.

Additionally, the definitions suggested by the court of appeals create the possibility of an unjust and unreasonable result through inequitable sentences for similarly situated defendants. *See* Tex. Gov't Code § 311.021(3). The court of appeals held that the evidence is sufficient to establish attempted "use" or actual "presentment." *Clinton*, 327 S.W.3d at 368. Under the court of appeals's analysis, had the indictment alleged "presentment" of the card, appellant would have been properly sentenced under this statute. But because the indictment only alleged "use," the conviction had to be reformed to attempted "use," and the case was remanded for new sentencing for attempted debit card abuse, a Class A misdemeanor. *See* Tex. Pen. Code § 15.01(d) (attempted offense is one category lower than offense that was attempted). Under the court of appeals's analysis, under circumstances like these, the defendant could be charged with "presentment" or with attempted "use," with each offense potentially resulting in a different punishment range. We conclude that the disparity in the applicable punishment range for the same conduct is contrary to the "just and reasonable result" presumably intended by the Legislature.

Although these definitions overlap, other criminal offenses have similar overlap in statutory terms, and we have determined that this does not render those terms meaningless or as necessarily producing an absurd result. *See Taylor v. State*, 117 S.W.3d 848, 851 (Tex.Crim.App.2003) (stating that overlap between the definitions of "employee" and "manager" was not "unusual or absurd" and did not justify deviating from "plain" meaning of terms); *see also Patterson v. State*, 769 S.W.2d 938, 940 (Tex.Crim.App.1989) (allowing for overlap between "use" and "exhibit" in deadly-weapon statute). Similarly, these definitions are not absurd merely because there is some overlap in their meaning.[5]

Furthermore, this overlap does not render these definitions ambiguous. "There is nothing vague or ambiguous in stating the act that is an element of the offense in terms of 'presents or uses.' " *Nolan v. State*, 629 S.W.2d 940, 943 (Tex. Crim.App.1982). The words "presents" and "uses," as used in this statute, are words of common usage, rather than technical terms of art, and so they may be defined by their commonly understood meaning. *See id.* We recognize that applying the commonly understood meaning to these words results in a conclusion that a person who "presents" the card has almost always necessarily "used" it. But the

---

**5.** We note that appellant suggests that allowing overlap in "uses" and "present" conflicts with how "manufactures, delivers, or possesses with intent to deliver" is interpreted in the health code. *See* Tex. Health & Safety Code § 481.112(a). Appellant cites no authority in support of this argument. Furthermore, the only case law interpreting these terms involves a different context (double-jeopardy considerations) and does not support appellant's argument. *See Guerrero v. State*, 305 S.W.3d 546, 551 (Tex.Crim.App.2009) (considering whether double jeopardy barred the prosecution of both manufacturing and possession of methamphetamine); *Lopez v. State*, 108 S.W.3d 293 (Tex.Crim.App.2003) (holding that State's interpretation, which would allow for individual prosecutions for each manner and means of committing the offense, was "overly literal, and [did] not comport with common sense").

mere fact that the terms overlap does not render them ambiguous. *See Patterson,* 769 S.W.2d at 940.

In *Patterson,* this Court determined that any "exhibiting" of a deadly weapon would likely also qualify as a "use." *Id.* Despite this total overlap in terms, the Court did not conclude that either of the terms were ambiguous. *Id.* As *Patterson* illustrates, the presumptions provided by the canons of constructions are presumptions only, and these presumptions often conflict with one another. *See id.* To hold that a definition must completely satisfy all the presumptions of the canons of construction to not be considered ambiguous would result in finding many words to be ambiguous even where the legislative intent is clear. Here, the meaning intended by the legislature is "clearly understood," and we should not conclude otherwise simply on the basis that the terms overlap. *See Nolan,* 629 S.W.2d at 943. Because the plain words as used in the statute are not ambiguous and the result is not absurd, we refrain from considering the extratextual factors.

### 3. Application of Plain Language of Statute to This Case

 Because the dictionary definitions of "use" and "present" do not depend on obtainment of a benefit, the plain language of the statute makes apparent that an individual need only have utilized the card for the intended purpose of obtaining a benefit. Examining all the evidence in the record in the light most favorable to verdict, the evidence shows that appellant "used" the card when she swiped it through the card reader for the purpose of purchasing cigarettes. *See Jackson,* 443 U.S. at 318, 99 S.Ct. 2781. We conclude that any rational jury could have found the essential elements of the crime beyond a reasonable doubt. *See id.; Vernon,* 841 S.W.2d at 409.

### III. Conclusion

We reverse the court of appeals and reinstate the judgment of the trial court.

PRICE, J., filed a concurring opinion.

PRICE, J., filed a concurring opinion.

I agree with the Court's conclusion that the evidence was legally sufficient to establish that the appellant "used" the debit card in this case.[1] I agree that Section 32.31 of the Penal Code should not be construed in such a way as to require the State to prove that the perpetrator engaged in acquisitive conduct.[2] But I arrive at this conclusion taking a somewhat different route than the Court does. I write separately to explain my own thinking in the matter.

As I understand the Court's opinion, it finds that the plain language of Section 32.31(b)(1) dispels any notion that proof of acquisitive conduct is required. As the Court itself acknowledges, "[t]o determine the plain meaning of a statute, we apply the canons of construction."[3] The Penal Code authorizes courts to consult, *inter alia,* Section 311.021 of the Code Construction Act.[4] That provision, in turn, requires

---

1. Majority opinion, at 803.

2. *See* Tex. Pen.Code § 32.31(b)(1) ("A person commits an offense if . . . with intent to obtain a benefit fraudulently, he presents or uses a credit card or debit card with knowledge that . . . the card, whether or not expired, has not been issued to him and is not used with the effective consent of the cardholder; or . . . the

card has expired or has been revoked or cancelled[.]").

3. Majority opinion, at 800.

4. *See* Tex. Pen.Code § 1.05(b) ("Unless a different construction is required by the context, Sections 311.011, 311.012, 311.014, 311.015, and 311.021 through 311.032 of Chapter 311,

courts to presume that, in enacting a statute, the Legislature intended the entire statute to be effective.[5] *Boykin v. State* dictates that, in considering whether the text of a statute is in fact plain on its face, courts should consult "established canons of construction relating to such text[.]"[6]

Unlike the Court, I do not find the language of Section 32.31(b)(1) to be wholly without ambiguity. Applying the canon of statutory construction that all words must be given independent significance, it seems to me, renders Section 32.31(b)(1) less than plain on its face for the very reason that it is not readily evident in what respect the Legislature intended that "using" a credit or debit card to fraudulent effect should differ from "presenting" a credit or debit card to fraudulent effect.[7] On the surface, at least, it is hard to imagine an ordinary use of a credit or debit card that does not also involve its presentment. But if the use of a credit or debit card invariably involves the presentment of the credit or debit card, then the two concepts fail to have independent significance, and, even if use also requires something *more* than mere presentment, presentment is superfluous, since use will include it. Or else, use is redundant because it requires too much, since presentment, a concept wholly subsumed by use, will always serve by itself to constitute an offense under the statute. Only where, as here, the indictment alleges only use, not presentment, does the State commit itself to proving whatever it is that use requires *beyond* mere presentment. The court of appeals made a valiant attempt to construe the statute in a way that would give each word at least some independent meaning, essentially by declaring that using a credit or debit card requires proof of acquisitive conduct, while presentment does not.[8] Accordingly, because the State alleged only "use," but did not prove that the appellant successfully acquired any benefit, the court of appeals held that the evidence was insufficient to support the appellant's conviction.[9]

The Court today concludes that the respective dictionary definitions of neither "uses" nor "presents" will support the court of appeals's conclusion that Section 32.31(b)(1) requires the State to prove the actual attainment of a benefit.[10] For this reason, the Court rejects the court of appeals's holding that use can be differentiated from presentment on this particular

Government Code (Code Construction Act), apply to the construction of this code.").

5. *See* Tex. Gov't Code § 311.021(2) ("In enacting a statute, it is presumed that ... the entire statute is intended to be effective[.]").

6. 818 S.W.2d 782, 785 (Tex.Crim.App.1991). *See also Shipp v. State*, 331 S.W.3d 433, 437 & n. 22 (Tex.Crim.App.2011) (plurality opinion).

7. It is true that in *Nolan v. State*, 629 S.W.2d 940, 943 (Tex.Crim.App.1982), we declared that there was "nothing vague or ambiguous" about Section 32.31(b)(1)'s "presents or uses" element such as would render the statute unconstitutionally vague, "for they are words of

such common usage that the simple act of presenting or using may be clearly understood." But that case did not involve the question of the difference in meaning that the Legislature contemplated the two words should have.

8. *Clinton v. State*, 327 S.W.3d 366, 371 (Tex. App.-Texarkana 2010) ("In order to prevent the term 'present' from being rendered meaningless, we conclude that 'present' under Section 32.31 means to tender the debit or credit card, and 'use' means to employ the card in any other manner including, but not limited to, successfully completing a transaction.").

9. *Id.* at 371–72.

10. Majority opinion, at 800–02.

basis.[11] I am inclined to agree with the Court's bottom line—if for no other reason than that Section 32.31(b)(1) appears in Chapter 32 of the Penal Code, which generally proscribes conduct that is fraudulent in nature, not necessarily acquisitive. But if neither "uses" nor "presents" requires proof of acquisitive conduct, how else may the two words be delineated? The Court seems never to squarely confront this question even though it was central to the court of appeals's analysis.

Because I regard Section 32.31(b)(1) as ambiguous, I am free in my own thinking to proceed beyond the text of the statute itself to consider extra-textual factors. Section 311.023(4) of the Code Construction Act permits the courts, in construing a statute, to consider "former statutory provisions, including laws on the same or similar subjects[.]"[12] According to the Practice Commentary accompanying the 1973 enactment of Section 32.31 of the Penal Code, it was intended to be "a restatement" of two former penal code provisions.[13] The first of these former provisions was Article 1555b of the old Penal Code. As originally enacted in 1959, Article 1555b seemed on its face to proscribe acquisitive conduct; it made it unlawful to "knowingly make use" of an expired or revoked gasoline credit card "in obtaining credit for the purchase of gasoline, motor oil, or other motor vehicle supplies, equipment, or services."[14] That the Legislature intended for this language to require proof of acquisitive conduct was underscored by the language of the penalty provisions of the statute, which tied the level of punishment to which the actor was susceptible to "the amount of the credit purchase" involved.[15]

But in 1963, the Legislature rewrote Article 1555b from scratch.[16] The new version of Article 1555b did not just apply to gasoline credit cards, but made it unlawful to "present" any credit card with the fraudulent intent to obtain goods or services.[17] Then, as now, a "credit card" was defined to include, *inter alia,* a "number" authorizing the holder or purported holder to obtain goods and services on credit.[18] To "present" a credit card was defined to embrace:

> not only physical presentation of such card but also ... the representation by the person attempting to obtain, obtaining or paying for items of value or services that such card is valid and exists, and the person so honoring such card [must rely] on such statement from the person making its presentation.[19]

11. *Id.*, at 803.

12. Tex. Gov't Code § 311.023(4).

13. *See* Tex. Penal Code § 32.31 (West 1989), Practice Commentary at 200 ("Section 32.31 is a restatement of Articles 1555b and 1555c of the old Penal Code with several changes" not pertinent to the present issue).

14. *See* Acts 1959, 56th Leg., ch. 408, § 1, p. 885, eff. May 30, 1959 ("It shall be unlawful for any person to knowingly make use of any expired or revoked credit card or 'courtesy card' in obtaining credit for the purchase of gasoline, motor oil, or other motor vehicle supplies, equipment, or services.").

15. *Id.* § 4, p. 886.

16. Acts 1963, 58th Leg., ch. 162, p. 460, eff. Aug. 23, 1963.

17. *Id.* § 1 ("It shall be unlawful for any person to present a credit card or alleged credit card, with the intent to defraud, to obtain or attempt to obtain any item of value or service of any type; or to present such credit card or alleged credit card, with intent to defraud, to pay for items of value or services rendered.").

18. *Id.* § 3.

19. *Id.* This definition of presentment was not carried over into present-day Section 32.31(b)(1), but it is a similar (and, I think, common sense) understanding of the word that leads me to believe that any ordinary

It would thus appear that, under Article 1555b, it would have constituted an offense, *inter alia*, to fraudulently attempt to obtain goods or services by reading a purported credit card number to a sales or service representative over the telephone. No actual credit card was even required to exist and the actual acquisition of goods or services was unnecessary to consummate the offense. Moreover, from the 1963 amendment on, Article 1555b nowhere proscribed the fraudulent *use* of a credit card at all—only the fraudulent *presentation*.

Then, in 1969, the Legislature enacted Article 1555c of the old Penal Code.[20] This new statute for the most part outlawed the forgery or theft of credit cards themselves and/or the knowing purchase or other acquisition of such forged or stolen credit cards. But Section 9 of Article 1555c additionally proscribed two other kinds of conduct that are relevant to our construction of Section 32.31 of the current Penal Code. First, it made it an offense for a person,

with intent to defraud, to "use[ ]" a credit card that is "obtained or retained" contrary to other provisions of Article 1555c "for the purpose of obtaining money, goods, services, or anything else of value[.]"[21] The Legislature obviously did not intend for the word "use" in this context to require proof of acquisitive conduct, but only proof of an inchoate acquisitive *intent*, since the actor need only have the "purpose" to obtain something valuable to be liable for the offense.[22] The second offense enumerated in Section 9 of Article 1555c actually *did* require proof of acquisitive conduct.[23] But it did so expressly, by requiring that the actor "obtain" the thing of value, without resort to the word "use."

This examination of prior statutes leads me to conclude that the Legislature's employment of the word "use" in Section 32.31(b)(1) of the current Penal Code was not intended—at least not *by itself* intended—to require proof of acquisitive conduct.[24] Whatever difference we may think

"use" of a credit or debit card—even the entry of a credit or debit card number, real or fictitious, for the purpose of making an internet purchase—would surely also constitute a "presentment" in contemplation of the current statute.

20. Acts 1969, 61st Leg., ch. 813, p. 2429, eff. Sept. 1, 1969.

21. *Id.* § 9, p. 2430–31 ("A person who, with intent to defraud the issuer, a person or organization providing money, goods, services, or anything else of value, or any other person ... (i) uses for the purpose of obtaining money, goods, services, or anything else of value a credit card obtained or retained in violation of [other provisions of Article 1555c] or a credit card which he knows is forged, expired, or revoked ... is guilty of an offense[.]").

22. The Model Penal Code contains similar language, making it an offense whenever a person "uses a credit card for the purpose of obtaining property or services" under fraudu-

lent circumstances. MODEL PENAL CODE § 224.6 (1962). That proof of actual acquisitive conduct was not intended by the drafters is evident from the penalty provision of the model statute, which makes it a third degree felony if "the value of the property or services secured *or sought to be secured* by means of the credit card exceeds $500[.]" *Id.* (emphasis added).

23. Acts 1969, 61st Leg., ch. 813, § 9, p. 2430–31 ("A person who, with intent to defraud the issuer, a person or organization providing money, goods, services, or anything else of value, or any other person ... (ii) obtains money, goods, services, or anything else of value by representing without the consent of the cardholder that he is the holder of a specified card or by representing that he is the holder of a card and such card has not in fact been issued, is guilty of an offense[.]").

24. Elsewhere, Section 32.31 of the current Penal Code does seem to require actual acquisitive conduct, employing the word "use." *See* TEXAS PENAL CODE § 32.31(b)(7) ("A person commits an offense if ... he uses or induces

the Legislature had in mind in proscribing both the fraudulent "use" and the fraudulent "presentation" of a credit or debit card, it should not involve ascribing a requirement of acquisitive conduct to the former, as the court of appeals erroneously did here. So how do we differentiate them? Can we differentiate them in a way that gives some independent significance to both?

Ultimately, I do not really think that we can. But that does not mean, as the court of appeals believed, that we must attribute an intention to the Legislature that all *other* indicators point against—that the word "uses" in the statute must be interpreted to require acquisitive conduct. As the Court suggests,[25] notwithstanding Section 311.021(2)'s presumption that the entire statute was intended to be effective, we have sometimes tolerated the construction of a statute that not only regards two words as overlapping, but indeed, renders one word wholly subsumed by another. The best example is *Patterson v. State*,[26] in which we construed the deadly weapon provision of Article 42.12, Section 3g, of the Code of Criminal Procedure.[27] In that

context, we gave the word "used" a broad meaning even while recognizing that to do so rendered its partner, "exhibited," essentially redundant, since "it is doubtful one can exhibit a deadly weapon during the commission of a felony without using it."[28] Still, we found the broad interpretation of "used" to best comport with the legislative intent.[29] Similarly here, giving the word "uses" in Section 32.31(b)(1) a narrower construction than the court of appeals opted for is more faithful to the legislative intent, even though to do so essentially renders "presents" superfluous.

With this explanation, I concur in the judgment of the Court.

---

the cardholder to use the cardholder's credit card or debit card to obtain property or service for the actor's benefit for which the cardholder is financially unable to pay[.]"). But it accomplishes this by employing the word "use" in combination with the words "to obtain"—much as former Article 1555c, Section 9(a)(ii), employed the word "obtains" to signify the Legislative intent that actual acquisitive conduct be proven. Similarly, the 1959 version of Article 1555b employed the word "use" to denote acquisitive conduct, but only in combination with the further phrase, "in obtaining credit for the purchase of gasoline," etc. In the entire history of Section 32.31 and its predecessors, the Legislature does not seem to have ever meant for "use," alone, to signal a requirement that acquisitive conduct be proven.

25. Majority opinion, at 802–03.

26. 769 S.W.2d 938 (Tex.Crim.App.1989).

27. Tex.Code Crim. Proc. art. 42.12, § 3g.

28. *Patterson, supra*, at 941.

29. I should think that other indicia of legislative intent may serve to rebut the presumption of Section 311.021(2). As the Court observed in *Patterson*, "[t]here are a multitude of rules for statutory construction, and authority exists in support of virtually every position one might wish to take. The most common thread running through these competing maxims is for the judiciary to attempt to effectuate the intent of the Legislature." *Id.* at 940. Indeed, "our paramount duty in construing statutory language is to effectuate the intent of the Legislature." *State v. Rodriguez*, 339 S.W.3d 680, 687 (Tex.Crim.App.2011) (Price, J., concurring).