**IN RE Eric Dean PERKINS**

**NUMBER 13–16–00001–CR**

Court of Appeals of Texas,
Corpus Christi-Edinburg.

Delivered and filed April 1, 2016

Mark Skurka, District Attorney, Jenny Cron, Assistant County Attorney, Samuel L. Neal Jr., County Judge, Laura Garza Jimenez, County Attorney, Corpus Christi, TX, for Real Party In Interest.

Jessica Brand, Texas Defender Service, Austin, TX, Kathryn Kase, Texas Defender Service, Houston, TX, for Amicus Curiae.

L. T. Bradt, L. T. Bradt PC, Sugar Land, TX, Michael Mowla, Attorney at Law, Cedar Hill, TX, for Relator.

Before Chief Justice Valdez and Justices Rodriguez and Benavides

## OPINION

Opinion by Chief Justice Valdez [1]

On January 4, 2016, relator Eric Dean Perkins filed a petition for writ of mandamus contending that the trial court erred in refusing to authorize full payment of his attorney's fees for the legal services that he provided as court-appointed second-chair counsel in a capital murder case.[2]

---

**1.** *See* Tex.R. App. P. 47.4 (distinguishing opinions and memorandum opinions); *Id.* R. 52.8(d) ("When denying relief [in an original proceeding], the court may hand down an opinion but is not required to do so. When granting relief, the court must hand down an opinion as in any other case.").

**2.** This cause arises from *State v. Gaytan*, trial court cause number 14–CR–0694–H in the 347th District Court of Nueces County, Texas.

See TEX. CODE CRIM. PROC. ANN. arts. 26.05, 26.052 (West, Westlaw through 2015 R.S.); TEX.R. JUD. ADMIN. [5th Admin. Dist.], *Standards and Rules for Qualification of Attorneys for Appointment to Death Penalty Cases*, available at http://www.txcourts.gov/media/614175/DPAppts–Qual Standards.pdf (hereinafter "Standards and Rules").

After due consideration of the statutory scheme, the requirement that qualified and competent counsel be appointed to represent indigent defendants under a sentence of death, the exigencies involved in representing individuals under the threat of the most dire penalty imposed by law, the necessity for an ordered and economical judicial system, and the broad discretion vested in trial judges to manage their cases, we deny the petition for writ of mandamus.

## I. BACKGROUND

On March 3, 2014, Perkins was appointed as second-chair counsel to represent defendant Brendan Gaytan in a murder case in which the State sought the death penalty. The case went to trial in late February of 2015. Gaytan was found guilty and was sentenced to life imprisonment. While representing Gaytan, Perkins submitted several interim invoices for his legal services to the respondent. Those interim invoices were timely paid. On March 8, 2015, after the conclusion of trial, Perkins submitted his final invoice in the amount of $48,120.89 to the respon-

dent. The respondent did not issue a payment for his final invoice.

On May 8, 2015, Perkins submitted a verified motion for payment of attorney's fees to the Honorable J. Rolando Olvera, who was the Presiding Judge of the Fifth Administrative Judicial Region at that time.[3] According to Perkins's motion, the respondent had "not provided counsel a reason for non-payment beyond expressing her opinion that the bill is excessive." On May 19, 2015, after Perkins filed his verified motion with Judge Olvera, the respondent paid Perkins $27,200.00 of the amount requested in Perkins' final invoice. Accordingly, on May 19, 2015, Judge Olvera issued an order denying, without prejudice, Perkins's motion for payment of attorney's fees as moot. According to the order:

> On May 8, 2015, attorney Eric Perkins filed a Motion for Payment of Attorney Fees in cause number 14–CR–694–H, styled *State of Texas vs. Brendan Gaytan* in the 347th Judicial District Court, Nueces County, Texas. On or about May 19, 2015, [the respondent] authorized payment of Attorney Eric Perkins's attorney's fees; however, payment was authorized at a lower rate than that submitted by Attorney Eric Perkins. Therefore, the Motion for Payment of Attorney Fees as it stands is rendered moot and is hereby DENIED WITHOUT PREJUDICE. Movant retains the right to refile an amended verified motion if necessary.

The respondent in this original proceeding is the Honorable Missy Medary. *See* TEX. R. APP. P. 52.2. An appeal arising from this trial court proceeding is currently pending in this Court in appellate cause number 13–15–00129–CR.

3. The Honorable J. Rolando Olvera was appointed to serve as a United States District

Judge and was administered the oath for that office on August 5, 2015. According to the petition for writ of mandamus, he resigned as Presiding Judge of the Fifth Administrative Judicial Region on July 31, 2015. The current Presiding Judge of the Fifth Administrative Judicial Region is the respondent in this cause.

That same day, Perkins filed an amended verified motion for payment of his attorney's fees with Judge Olvera, again requesting payment of the full amount of his final invoice. According to the amended verified motion, the respondent "has not provided counsel a reason for not paying the balance remaining beyond expressing her opinion that the bill is excessive." On June 5, 2015, Judge Olvera denied Perkins' amended motion for payment of attorney's fees on grounds that, after "careful consideration," the motion was "without merit."

This original proceeding ensued. By one issue, Perkins alleges that the respondent committed a clear abuse of discretion when she refused to authorize payment for all of the time he expended on the case as required by the fee schedule established by the Fifth Administrative Judicial Region because: (1) he was appointed to represent a defendant charged with capital murder; (2) he rendered services in the discharge of his obligations to the defendant; and (3) after completion of this representation, and in obedience to the order appointing him, he submitted his request for payment for his services in reliance on and in compliance with the fee schedule. Perkins contends that the Standards and Rules established by the Fifth Administrative Judicial Region "mandate" that a second chair death penalty counsel "shall be compensated at the rate of $150 per hour for in-court and out-of-court work." He thus contends that the respondent abused her discretion by failing to pay the full amount of his attorney's fees which were supported by itemized bills.

This Court requested the real parties in interest to file a response to Perkins's petition for writ of mandamus; these real parties in interest included the State of Texas, acting by and through the Honorable Laura Garza Jimenez, the County Attorney for Nueces County, Texas; the Honorable Mark Skurka, the District Attorney of Nueces County, Texas; the Honorable Lloyd Neal, the County Judge for Nueces County; or any others whose interest would be directly affected by the relief sought. See TEX. R. APP. P. 52.2, 52.4, 52.8(b). The State of Texas did not file a response to the petition for writ of mandamus. Jimenez filed a response on behalf of Nueces County, asserting that she "is not an attorney for State officials, nor does she prosecute criminal matters." Jimenez further asserts that Judge Neal, "as a member of the Commissioners Court, only approves payment of attorney's fees for court appointed counsel pursuant to what is authorized by the presiding judge of the matter" and that Judge Neal is "unaware of any facts to challenge the merits of the petition."

The respondent filed a response to the petition for writ of mandamus asserting that she did not abuse her discretion in concluding that Perkins's final invoice was not reasonable and awarding him less than the amount he had requested.[4] According to the respondent, Perkins submitted three interim invoices during the course of his representation of Gaytan in the amounts of $8,860.40, $10,155.00, and $11,002.50, and respondent authorized payment of these interim invoices in full.[5] When Perkins submitted the third interim invoice to the respondent, he informed her that "a signif-

---

4. The respondent filed a motion for leave to file a late response to the petition for writ of mandamus with her response. We grant her motion for leave and consider her response as timely filed.

5. The respondent asserts that she paid Perkins $29,817.90 as payment for these interim invoices. However, by our calculations, she paid him $30,017.90. This discrepancy is not material to our analysis of the issues presented in this original proceeding.

icant portion of the services provided and detailed in this bill took place in anticipation of . . . trial," and with "the trial now reset," Perkins stated that "the bulk of trial preparation is now complete and this will probably be the last of the interim bills." With regard to Perkins's final invoice for $48,120.89, the respondent concluded that the number of hours of work detailed on the invoice was not reasonable. According to the respondent, the trial lasted eighteen days. Twelve of these days were jury selection days and "many" of these "were not full days." Nevertheless, the respondent paid Perkins for ten hours of work per day of trial at $150.00 per hour, which totaled approximately $27,000.00. The respondent "felt this payment was reasonable, in fact generous."

The respondent further authorized payment of over $18,000 to an investigator hired by Perkins "because she was reassured by [Perkins] as he submitted the investigator's bill, that he was utilizing the investigator so much because it was better to pay the investigator $65.00 per hour, [than Perkins] at $150.00 or the first-chair counsel at $200.00 an hour."

Finally, the respondent asserted that the attorney's fees invoices submitted by other appointed counsel in this case supported her decision to cut Perkins's final invoice. First-chair trial counsel in this case, Rick Rogers, who billed at $200.00 hourly, submitted one bill from the date of his appointment through trial in the amount of $27,949.02. The respondent paid this bill in full. First-chair appointed counsel for a co-defendant in the case submitted one bill in the amount of $33,580.00 and the second-chair appointed counsel for the co-defendant submitted one bill for $4,425.00. The respondent also paid these bills in full. According to respondent:

> [T]he total of attorney fees awarded to [Perkins], including those authorized

and paid in the interim time amount to roughly $57,017.90. That is more than first-chair counsel . . . was paid, and both counsel for [the codefendant] were paid combined. Therefore, the Court found that the final bill submitted by Relator for $48,000.00 to be excessive and unreasonable. Accordingly, the Court did not abuse her discretion by authorizing payment of less than the submitted final bill, but was exercising her authority to question the submitted itemized times of work submitted by [Perkins] as granted by the [Texas] Code of Criminal Procedure.

Perkins filed a reply to the respondent's response. According to Perkins, the respondent effectively reduced his fee from $150 per hour to $84.85 per hour, and whether she "cut the number of hours or the rate per hour, the effect is the same." Further, Perkins states that the orders appointing Rogers and himself to represent Gaytan do not specify whether the appointments are for service as first-chair or second-chair counsel, and notes that the order appointing him was signed first. Relator thus argues:

> Applying the "first in time, first in right rule," would mean that Relator was actually first chair counsel and, as such, entitled to be compensated at the rate of $200 per hour, not $150 per hour. That would mean that Relator is owed an additional $7,052.50 on the 141.05 hours that he worked, as reflected in those invoices.

> Since there is no order designating him as Second Chair counsel, Relator is not sure how he mistakenly came to believe that he was only Second Chair. But that mistaken belief should not adversely impact his ability to seek and be paid compensation at the First Chair rate.

In addition to the briefing filed by the parties, this Court also received an amicus

curiae brief from the Texas Defender Service. The Texas Defender Service contends that: (1) capital representation is uniquely demanding because of the potential for a death sentence; (2) the failure to adequately fund the work performed by capital attorneys threatens the integrity of the judicial system and the right to counsel; and (3) the trial court's ruling threatens to chill attorneys from taking death penalty appointments and violates the letter and spirit of the Fair Defense Act. *See* TEX.CRIM. PROC.CODE ANN. §§ 1.051, 26.04 (West, Westlaw through 2015 R.S.) (comprising the Texas Fair Defense Act); *see also Lopez v. State*, No. 13–13–00080–CR, 2015 WL 602007, at *5 (Tex.App.–Corpus Christi Feb. 12, 2015, pet. ref'd) (mem. op., not designated for publication) (stating that the Texas Fair Defense Act governs the appointment of counsel for indigent criminal defendants in certain cases and authorizes judges to establish a list of attorneys qualified to provide representation and to specify the objective qualifications necessary for an attorney to be included on the list).

## II. STANDARD OF REVIEW

▇▇▇▇ To be entitled to mandamus relief, the relator must show: (1) that he has no adequate remedy at law; and (2) that what he seeks to compel is a ministerial act. *In re State ex rel. Weeks*, 391 S.W.3d 117, 122 (Tex.Crim.App.2013) (orig.proceeding). If the relator fails to meet both of these requirements, then the petition for writ of mandamus should be denied. *State ex rel. Young v. Sixth Jud. Dist. Ct. of Apps. at Texarkana*, 236 S.W.3d 207, 210 (Tex.Crim.App.2007) (orig.proceeding). A remedy at law, though it technically exists, "may nevertheless be so uncertain, tedious, burdensome, slow, inconvenient,

inappropriate, or ineffective as to be deemed inadequate." *Greenwell v. Ct. of Apps. for the Thirteenth Jud. Dist.*, 159 S.W.3d 645, 648–49 (Tex.Crim.App.2005) (orig.proceeding). The act sought to be compelled must be a ministerial act that does not involve a discretionary or judicial decision. *See In re Allen*, 462 S.W.3d 47, 49–50 (Tex.Crim.App.2015) (orig.proceeding) (stating that a "ministerial act, by its nature, does not involve the use of judicial discretion; it must be positively commanded and so plainly prescribed under the law as to be free from doubt"); *State ex rel. Young*, 236 S.W.3d at 210 ("[I]t is improper to order a trial court to exercise its judicial (as opposed to its ministerial) function in a particular way unless the relator has a 'clear right to the relief sought' i.e., the law he invokes is definite, unambiguous, and unquestionably applies to the indisputable facts of the case."). The ministerial-act requirement is satisfied if the relator can show a clear right to the relief sought. *In re State ex rel. Weeks*, 391 S.W.3d at 122. A clear right to relief is shown when the facts and circumstances dictate but one rational decision "under unequivocal, well-settled (i.e., from extant statutory, constitutional, or case law sources), and clearly controlling legal principles." *Bowen v. Carnes*, 343 S.W.3d 805, 810 n. 6 (Tex.Crim.App.2011) (orig.proceeding); *see In re State ex rel. Weeks*, 391 S.W.3d at 122.

## III. ATTORNEY'S FEES

The Texas Code of Criminal Procedure contains specific provisions regarding the payment of court-appointed counsel in criminal cases. *See generally* TEX. CODE CRIM. PROC. ANN. arts. 26.05, 26.052 (West, Westlaw through 2015 R.S.).[6] Article

---

**6.** Article 26.05 of the code of criminal procedure was amended on September 15, 2015,

after the events at issue in this case; however, the amendments do not affect our analysis of

26.05 provides in relevant part that appointed counsel for a criminal defendant "shall be paid a reasonable attorney's fee" for performing the services "based on the time and labor required, the complexity of the case, and the experience and ability of the appointed counsel." *Id.* art. 26.05(a). Services specified in the statute include "time spent in court making an appearance on behalf of the defendant as evidenced by a docket entry, time spent in trial, time spent in a proceeding in which sworn oral testimony is elicited," and "reasonable and necessary time spent out of court on the case, supported by any documentation that the court requires." *Id.* art. 26.05(a)(1)–(2).

The code specifies that "payments made under this article shall be paid in accordance with a schedule of fees adopted by formal action of the judges of the county courts, statutory county courts, and district courts trying criminal cases in each county." *Id.* art. 26.05(b). Further, each fee schedule shall state "reasonable fixed rates or minimum and maximum hourly rates, taking into consideration reasonable and necessary overhead costs and the availability of qualified attorneys willing to accept the stated rates," and the schedule "shall provide a form for the appointed counsel to itemize the types of services performed." *Id.* art. 26.05(c). As applicable to this case, article 26.05(c) prohibits payments "until the form for itemizing the services performed is submitted to the judge presiding over the proceedings," and the judge approves payment. *Id.*

The code establishes a method for review of the attorney's fee awarded if the appointed counsel's request for payment is not acted on or is denied. *See Id.* If the judge disapproves the requested amount of payment, "the judge . . . shall make written findings stating the amount of payment that the judge or director approves and each reason for approving an amount different from the requested amount." *Id.* An attorney whose request for payment is disapproved or is not otherwise acted on by the sixtieth day after the date the request for payment is submitted may appeal the disapproval or failure to act by filing a motion with the presiding judge of the administrative judicial region. *Id.* Once such a motion has been filed, "the presiding judge of the administrative judicial region shall review the disapproval of payment or failure to act and determine the appropriate amount of payment." *Id.* In performing this review, the presiding judge of the administrative judicial region may conduct a hearing. *Id.* The commissioners court "shall" pay appointed counsel "the amount that is approved by the presiding judge of the administrative judicial region and that is in accordance with the fee schedule for that county." *Id.* Payment must be made not later than the forty-fifth day after the date an application for payment of a fee is submitted. *See Id.*

Payments to appointed attorneys under article 26.05 are paid from the general fund of the county in which the prosecution was instituted or the habeas corpus hearing was held and may be included as costs of court. *See id.* art. 26.05(f). If the trial court determines that a defendant has financial resources that enable the defendant to offset in part or in whole the costs of the legal services provided to the defendant, the trial court shall order the defendant to pay "the amount that the judge finds the defendant is able to pay." *Id.* art. 26.05(g).

The Standards and Rules adopted by the Fifth Administrative Judicial Region of

this case, and accordingly, we cite to the current version of the statute in this opinion.

*See* TEX. CODE CRIM. PROC. ANN. art. 26.05 (West, Westlaw through 2015 R.S.).

Texas provide the requirements for qualification of appointed counsel, the procedures to apply for inclusion on the list of qualified counsel for appointment, the committee review process for counsel's placement and maintenance on a list of qualified counsel, and the fee schedule referenced in and required by article 26.05. *See generally* Tex.R. Jud. Admin. [5th Admin. Dist.]. According to the fee schedule contained in the Standards and Rules, "[s]econd chair counsel shall be compensated at the rate of $150.00 per hour for in-court and out-of-court work." *Id.* R. 8(b). In contrast, "[f]irst chair or lead counsel and [a]ppellate counsel shall be compensated at the rate of $200.00 per hour. . . ." *Id.* R. 8(a).

As stated previously, Perkins contends that the respondent is required to pay the full amount of the attorney's fees that he requested as "mandated by the fee schedule established by the Fifth Administrative Judicial District." Perkins contends that he exhausted his administrative remedy by appealing to the Presiding Judge of the Fifth Administrative Judicial Region. In this regard, Perkins argues that the fee schedule contained in the Standards and Rules mandates a set amount to be paid per hour because it states that counsel "shall be compensated at the rate of $150.00 per hour." Perkins asserts that the use of the term "shall" indicates that payment of this full amount is mandatory.

■■ "We construe a statute according to its plain meaning without considering extra-textual factors unless the statutory language is ambiguous or imposing the plain meaning would cause an absurd result." *Clinton v. State*, 354 S.W.3d 795, 800 (Tex.Crim.App.2011). To determine the plain meaning of a statute, we apply the canons of construction. *Rushing v. State*, 353 S.W.3d 863, 865 (Tex.Crim.App. 2011). Among the canons of construction is a list of presumptions regarding legislative intent. *See* Tex. Gov't Code Ann. § 311.021 (West, Westlaw through 2015 R.S.); *see Clinton*, 354 S.W.3d at 800. Under these presumptions, in the Legislature's enactment of a statute, it is presumed that (1) compliance with the constitutions of this state and the United States is intended; (2) the entire statute is intended to be effective; (3) a just and reasonable result is intended; (4) a result feasible of execution is intended; and (5) public interest is favored over any private interest. Tex. Gov't Code Ann. § 311.021; *see Clinton*, 354 S.W.3d at 800.

■■ It is true that the word "shall" generally indicates a mandatory duty. *Luquis v. State*, 72 S.W.3d 355, 363 (Tex. Crim.App.2002); *see Brinkley v. State*, 167 Tex.Crim. 472, 320 S.W.2d 855, 856 (App. 1958) ("We agree that the word 'shall' when used in a statute may sometimes be construed as permissive or directory, but we understand the rule to be that 'shall' must be given that meaning which will best express the legislative intent."). However, the Fifth Administrative Judicial Region expressly adopted the Standards and Rules "pursuant to Article 26.052." Article 26.052, together with article 26.05, requires the adoption of a fee schedule, including either reasonable fixed rates or maximum and minimum hourly rates. *See* Tex. Code Crim. Proc. Ann. arts. 26.05, 26.052. An agency can only adopt rules that are authorized by and consistent with its statutory authority. *See R.R. Comm'n of Tex. v. Lone Star Gas Co.*, 844 S.W.2d 679, 685 (Tex.1992). Accordingly, we construe such rules and statutes consistently and give effect to the provisions of each. *See, e.g., Azeez v. State*, 248 S.W.3d 182, 192 (Tex.Crim.App.2008). The directive contained in the Standards and Rules stating that counsel "shall be compensated" is subject to article 26.05's limitation: the trial court "shall" award such fees only to

the extent that they are "reasonable," a term that connotes a discretionary act rather than a mandatory one. *See Westergren v. Banales*, 773 S.W.2d 764, 765 (Tex. App.–Corpus Christi 1989, orig. proceeding) (concluding that the trial court had a ministerial duty to order the payment of an appointed attorney's fees and did not have discretion to condition the award upon the defendant's payment of the fees and stating that the "amount of the fee was clearly within the trial court's discretion").

■ We reject Perkins's contention that article 26.05 and the Standards and Rules eliminate any discretion in the trial court's award of fees. *See id.* The code of criminal procedure clearly indicates that the trial court retains discretion to award partial payment of a requested amount insofar as the code specifically provides for a review process when the court "disapproves the requested amount of payment." *See* Tex. Code Crim. Proc. Ann. art. 26.05(c). Further, article 26.05 as a whole recognizes the application of judicial discretion to an award of attorney's fees because it provides for "a reasonable attorney's fee" that is "based on the time and labor required, the complexity of the case, and the experience and ability of the appointed counsel." *Id.* Accordingly, as the Dallas Court of Appeals held in *Hester v. State,* "the trial court has discretion in determining the proper value of the legal fees it orders a defendant to pay under article 26.05," 859 S.W.2d 95, 97 (Tex.App.–Dallas 1993, no pet.). We thus conclude that the trial court's determination regarding the amount of fees to award appointed counsel is a discretionary rather than ministerial act. *See Westergren*, 773 S.W.2d at 765. Therefore, the respondent did not err in refusing to award Perkins the full amount of the fees he requested.

In this regard, we note that the trial court acts as the trier of fact when determining the amount of fees to award an appointed attorney under the code of criminal procedure and the Standards and Rules. The trial court is generally in the best position to determine the appropriate fees to award appointed attorneys for their work on a case. We are aware, as was the respondent, that attorneys who represent an individual whose life is at stake in the course of a criminal prosecution bear extraordinary emotional and professional burdens. Those attorneys who qualify for and serve as appointed counsel in capital cases are entrusted with one of the greatest responsibilities known to our legal system. Appointed counsel in capital cases perform a necessary and vital role in providing indigent criminal defendants with competent and skilled legal representation and further serve the public good by ensuring that our legal system fairly operates with respect to the rights of all litigants. The code of criminal procedure takes these factors into account when it requires qualified attorneys to be paid fees that are "reasonable." The trial court's award of "reasonable" fees in accordance with the fee schedule should not provide an economic disincentive for counsel to receive appointments or to discourage competent attorneys from agreeing to a court appointment, thereby diminishing the pool of experienced, talented attorneys available to the trial court for appointment.

■ Further, while mandamus relief may certainly be appropriate in some instances to remedy issues pertaining to the payment of attorney's fees in criminal cases, *see, e.g., Smith v. Flack,* 728 S.W.2d 784, 787–94 (Tex.Crim.App.1987) (en banc); *Weiner v. Dial,* 653 S.W.2d 786, 787 (Tex. Crim.App.1983), the code of criminal procedure provides an appellate remedy for the trial court's failure to act and for the

trial court's disapproval of the amount of fees requested. In this case, Perkins sought and obtained review of the respondent's initial failure to act within sixty days on his request for payment and then further sought and obtained review of the respondent's partial payment of the total fees that he requested. In this regard, Perkins has an adequate remedy at law. *In re State ex rel. Weeks,* 391 S.W.3d at 122.

We further note, however, that the code of criminal procedure requires the trial court to make "written findings" stating the amount of payment that the court approves and "each reason" for approving an amount different from the requested amount. *See* TEX. CODE CRIM. PROC. ANN. art. 26.05(c). It appears that the respondent failed to make any such required findings in this case in connection with her award of attorney's fees, although her rationale for the award has been made clear in her response to the petition for writ of mandamus. Perkins informed Judge Olvera that the respondent "authorized partial payment" but "has not provided counsel a reason for not paying the balance remaining beyond expressing her opinion that the bill is excessive." In his petition for writ of mandamus, Perkins alleges that the "[respondent] never made any written findings as to why [his] bill was not paid; what portion or parts of the bill were paid when the partial payment was authorized; and [he] was not given the opportunity of a hearing to either hear the reasons for nonpayment or explain the bill."

We doubt that review of an award of attorney's fees that differs from the requested amount can be effective without the written findings required by the statute. Effectual review of an award of attorney's fee decision requires at least a minimal level of factual findings in order for a reviewing court to determine whether the trial court's decision has support in the evidence. Findings should be sufficient to serve the purpose for requiring factual findings, which is to inform the parties and the courts of the basis for the decision so that the attorney, if necessary, may intelligently prepare an appeal and so that the presiding judge of the administrative judicial region may properly exercise its function of review. *Cf. Tex. Health Facilities Comm'n v. Charter Medical–Dallas, Inc.,* 665 S.W.2d 446, 451–52 (Tex.1984) (construing statutory fact-finding requirements as "sufficient to serve the overall purposes evident in the legislative requirement that they be made").

While Perkins brought the respondent's failure to make written findings to the attention of Judge Olvera, he did not seek relief from him on that basis. Further, nothing in the record before this Court indicates that the lack of written findings was brought to the attention of the respondent in order for her to rectify the problem. A basic tenet of mandamus practice provides that entitlement to mandamus relief requires a relator to establish a legal duty to perform a non-discretionary act, a demand for performance, and a refusal. *See In re Perritt,* 992 S.W.2d 444, 446 (Tex.1999) (orig.proceeding); *In re Mendoza,* 467 S.W.3d 76, 78 (Tex.App.–Houston [1st Dist.] 2015, orig. proceeding); *In re Honea,* 415 S.W.3d 888, 890 (Tex. App.–Eastland 2013, orig. proceeding); *Barnes v. State,* 832 S.W.2d 424, 426 (Tex. App.–Houston [1st Dist.] 1992, orig. proceeding). These requirements were not met in this case, and accordingly, we need not address this issue herein.

## IV. CONCLUSION

The Court, having examined and fully considered the petition for writ of mandamus and the applicable law, is of the opinion that relator has not met his burden to

obtain relief. Accordingly, we deny the petition for writ of mandamus.