PD-0257-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 8/17/2015 3:33:23 PM
Accepted 8/18/2015 8:09:09 AM
ABEL ACOSTA
CLERK

No. PD-0257-15

IN THE COURT OF CRIMINAL APPEALS

OF THE STATE OF TEXAS

GREGORY SHAWN HENLEY, Appellant

v.

THE STATE OF TEXAS, Appellee

Appeal from Tarrant County

* * * * *

**APPELLANT'S BRIEF ON THE MERITS**

* * * * *

WILLIAM S. HARRIS
Attorney for Appellant/Respondent
State Bar of Texas No. 09096700

307 W. 7th Street, Suite 1905
Fort Worth, Texas 76102
Phone: (817) 332-5575
Fax: (817) 335-6060
Email: wmsharris.law@sbcglobal.net

**NAMES OF ALL PARTIES TO THE TRIAL COURT'S JUDGMENT**

The names of all parties listed in the State's Brief on the Merits is correct and is adopted by the Appellant.

# TABLE OF CONTENTS

NAMES OF ALL PARTIES TO THE TRIAL COURT'S JUDGMENT. . I

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT REGARDING ORAL ARGUMENT. . . . . . . . . . . . . . . . . 1

RESPONSES TO ISSUE PRESENTED. . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

PRAYER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

CERTIFICATE OF COMPLIANCE. . . . . . . . . . . . . . . . . . . . . . . . . . 21

# TABLE OF AUTHORITIES

**Statutes, Rules and Constitutions.**

TEX. PENAL CODE § 22.04. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

TEX. PENAL CODE §1.07. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

TEX. PENAL CODE §20.02. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

TEX. PENAL CODE, §9.31. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 16

TEX. PENAL CODE §9.33. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

USCS Const. Amend. 6. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

**Cases.**

*Barton v. State*, 172 Tex.Cr.R. 600, 361 S.W.2d 716 (1962). . . . . . . . . . . 9

*Carter v. State*, 515 S.W.2d 668 (Tex.Cr.App. 1974). . . . . . . . . . . . . . . . 9

*Clinton v. State*, 354 S.W.3d 795 (Tex. Crim. App. 2011). . . . . . . . . . . 13

*Day v. State*, 532 S.W.2d 302 (Tex.Cr.App. 1976). . . . . . . . . . . . . . . . . 9

*Esparza v. State*, 520 S.W.2d 891 (Tex.Cr.App. 1979). . . . . . . . . . . . . . 8

*Ex parte Drinkert*, 821 S.W.2d 953 (Tex. Crim. App. 1991). . . . . . . . . . 17

*Ferrel v. State*, 55 S.W.3d 586 (Tex. Crim. App. 2001). . . . . . . . . . . . . 17

*Garcia v. State*, 528 S.W.2d 604 (Tex. Crim. App. 1975). . . . . . . . . . . . 12

*Garcia v. State*, 605 S.W.2d 565 (Tex.Cr.App. 1980). . . . . . . . . . . . . . . 8

*Hayes v. State*, 728 S.W.2d 804 (Tex. Crim. App. 1987). . . . . . . . . . . . . 9

*Hebert v. State*, 836 S.W.2d 252 (Tex. App. 1992). . . . . . . . . . . . . . . . 13

*Henley v. State*, 454 S.W.3d 106 (Tex. App.–Fort Worth 2014). . . . 8, 17, 19, 20

*Johnson v. State*, 571 S.W.2d 170 (Tex.Cr.App. 1978). . . . . . . . . . . . . . 8

*Macias v. State*, 2015 Tex. App. LEXIS 2319 (Tex. App. Corpus Christi Mar. 12, 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Montgomery v. State*, 810 S.W.2d 372 (Tex. Crim. App., 1990). . . . . . . . 3

*Moon v. State*, 607 S.W.2d 569 (Tex.Cr.App. 1980). . . . . . . . . . . . . . . . 8

*Richardson v. State*, 622 S.W.2d 852 (Tex. Crim. App. 1981). . . . . . . . 12

*Rock v. Arkansas*, 483 U.S. 44 (1987). . . . . . . . . . . . . . . . . . . . . . . . . 13

*Shaw v. State,* 243 S.W.3d 647 (Tex. Crim. App. 2007). . . . . . . . . 9,10-12

*Simpkins v. State*, 590 S.W.2d 129 (Tex.Cr.App. 1979). . . . . . . . . . . . . 9

*Warren v. State*, 565 S.W.2d 931 (Tex.Cr.App. 1978). . . . . . . . . . . . . 8, 9

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument was not permitted.

## RESPONSES TO ISSUE PRESENTED

**Response No. 1: The Court of Appeals correctly held that the appellant was entitled to present evidence that he acted in defense of a third person.**

**Response No. 2: The exclusion of evidence that was basic to the appellant's right to confrontation and cross-examination, while related to the defense of a third person, is an independent ground for sustaining the ruling of the Court of Appeals.**

## STATEMENT OF FACTS

Appellant regards the state's recitation of the facts as accurate. There is one supplemental addition to the state's account. After the Appellant stopped his attack on the complainant, after he stepped away and made a call on his cell phone, Brandy called 911 again.[1] Nothing in the record suggests that Appellant was aware that the 911operator on the first call had told Brandy to remain on the scene and await an officer.

## SUMMARY OF ARGUMENT

**Response No. 1: The Court of Appeals correctly held that the**

---

[1] 5 RR 70.

1

**Appellant was entitled to present evidence that he acted in defense of a third person.**

The State's argument is flawed in its interpretation of the relevant authority and in its limits on the definitions of terms relevant to the determination of these issues.

**Response No. 2: The exclusion of evidence that was basic to the Appellant's right to confrontation and cross-examination, while related to the defense of a third person, is an independent ground for sustaining the ruling of the Court of Appeals.**

While there is some overlap between the Court of Appeals first holding of error, it is not complete. The Court of Appeals also found that the ruling of the trial court deprived the Appellant of the right to confront and cross examine the witnesses against him. In addition to the defense that Appellant sought to advance, this also deprived him of the meaningful ability to impeach his accusers. This is an independent ground upon which the Court of Appeals reversal should be maintained.

ARGUMENT

**Standard of Review.**

The Court reviews error in refusing to admit evidence under the

2

abuse of discretion standard.[2]

**Response No. 1: The Court of Appeals correctly held that the Appellant was entitled to present evidence that he acted in defense of a third person.**

Throughout the trial, Appellant urged the court to allow him to present evidence on what he was trying to talk to Brandy Gillingham about, and why he was agitated. The jury was allowed to hear that Ms. Gillingham's visitation with her sons was required by the family court to be supervised by her mother or her father.[3] The trial court ruled they could not be informed of why her visits were supervised,[4]

Outside the presence of the jury, the Appellant developed that the boys had been sexually abused by A. G., the stepson of Douglas Gillingham, who was the boyfriend at the time of Ms. Gillingham.[5] A. G. had forced the two boys to perform sexual acts on one another in his presence. S. H., the younger boy, also alleged that Douglas Gillingham had choked him, although apparently Child Protective Services did not

---

[2]*Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App., 1990).

[3]5 RR 80.

[4]4 RR 29, 5 RR 41.

[5]Ms. Gillingham married Douglas Gillingham about a week after the assault, 5 RR 89.

3

find that accusation to be credible. Ms. Gillingham personally dismissed this accusation as not happening. The Appellant believed it had happened.

Nevertheless, the family court was sufficiently concerned that it ordered that Ms. Gillingham's visitations be supervised and that the boys not be around Douglas Gillingham. Ms. Gillingham had told the family court she was no longer living with Douglas Gillingham, but she admitted on cross examination, outside the presence of the jury, in this trial that that was a lie and that Appellant knew it was a lie when she made that representation to the SAPCR court.[6]

There apparently was an issue between Appellant and Ms. Gillingham about the number of times the sexual abuse occurred and how seriously Ms. Gillingham had taken the initial reports of abuse. J. H., the older boy, suffers from autism and S. H. from ADHD. On approximately the Thursday prior to the day of assault, S. H., in counseling corroborated what J. H. had told his mother about the abuse and, apparently for the first time, revealed that it had happened on

---

[6] 5 RR 86-88.

4

more than one occasion and on one occasion when Ms. Gillingham was in the house in a separate room. From these revelations in counseling, Appellant learned that the abuse had been more extensive and occurred on more occasions than they had first thought, 5 RR 111-113. J. H. had been saying all along that he had told his mother about the abuse, but this was the first time S. H. confirmed that. The confirmation that J. H. had told his mother and she had said she would take care of it, apparently led Appellant to believe that Ms. Gillingham had minimized the situation. He was trying to talk to her about it when she showed up for visitation, but she would not discuss it with him.[7] He felt she was, again, dismissing his concerns about their boys.[8] When he tried to tell Ms. Kennedy, the chaperone, she totally ignored him, also.[9] Thus, Appellant thought that Ms. Gillingham taking possession of the boys was placing them in danger of abuse. With the boys in the car, this danger was, to his thinking, immediate.

Appellant's defense was that he had acted in defense of third

---

[7] 5 RR 111.

[8] *Id.*

[9] *Id.*

5

parties, his sons.  Defense of a third party is statutorily defined in section 9.33 of the Penal Code. It consists of the following elements:

1.  Under the circumstances as the actor reasonably believes them to be,

2.  The actor would be justified in using force under section 9.31 to protect himself, and

3.  The actor reasonably believes that his intervention is immediately necessary.[10]

The testimony of Appellant was evidence that he had a reasonable belief that his ex-wife and former mother in law did not perceive the boys to be in any serious danger from Douglas Gillingham and that they minimized or did not believe full measure of the boys reports of abuse.  He had reason to believe that his wife was lying about the extent to which she was keeping the boys away from Douglas Gillingham, since by her own admission, she had lied to the SAPCR court about living with Douglas Gillingham.  And, it was apparent that neither his ex-wife nor his former mother in law were willing to listen

---

[10]TEX. PENAL CODE §9.33.

to the new information he was trying to convey to them. This created a reasonable apprehension of danger from Appellant's view point. Even after the bill of review was developed for the court, the court denied the Appellant the right to present the evidence, despite the Appellant's objection that the court was preventing him from putting on a defense.[11]

If Appellant had been as comparatively powerless as the two boys and as limited in reporting their needs for protection, he would have been justified in using force to leave the car. The prosecutor argued there was no immediacy because the revelation by S. H. had been made days before.[12] This misidentified what the immediate danger was. Appellant testified that he believed that the boys were being taken from him into danger and that was the immediacy that motivated him. Ultimately, after repeatedly excluding the evidence, the court ruled the evidence did not raise an issue of defense of a third party and would not let Appellant put on evidence to prove this factual situation.[13] When the

---

[11] 5 RR 121.

[12] 5 RR 118.

[13] 5 RR 121.

court ruled that Appellant could not put forward evidence of the reasons for the supervised visitation, Appellant complained that this would deprive him of meaningful cross examination and confrontation of the complainant.[14]

The Court of Appeals ruled that the trial court had erred in not allowing the Appellant to put forward his defense and not allowing him to adequately confront and cross examine his accuser.[15]

*Defense of a Third Person.*

The law is well established that if there is evidence that raises the elements of a defense, the Appellant is entitled to a charge on the defense and to have evidence submitted to the jury for a factual determination by the jury.

> This Court has consistently held that an accused is entitled to an instruction on every defensive issue raised by the evidence. *Moon v. State*, 607 S.W.2d 569 (Tex.Cr.App. 1980); *Garcia v. State*, 605 S.W.2d 565, 566 (Tex.Cr.App. 1980); *Johnson v. State*, 571 S.W.2d 170, 173 (Tex.Cr.App. 1978); *Warren v. State*, 565 S.W.2d 931, 933-4 (Tex.Cr.App. 1978); *Esparza v. State*, 520 S.W.2d 891, 892 (Tex.Cr.App. 1979). This is true regardless of whether such evidence is strong or

---

[14]4 RR 28.

[15]*Henley v. State*, 454 S.W.3d 106, 114, 116 (Tex. App.–Fort Worth 2014).

8

weak, unimpeached or contradicted, and regardless of what the trial court may or may not think about the credibility of this evidence. *Warren v. State, supra; Shaw v. State*, 510 S.W.2d 926 (Tex.Cr.App. 1974) (opinion on motion for rehearing); *Carter v. State*, 515 S.W.2d 668 (Tex.Cr.App. 1974).

It is also well settled that a defendant's testimony alone is sufficient to raise a defensive issue requiring an instruction in the jury charge. *Warren v. State , supra*; *Simpkins v. State*, 590 S.W.2d 129, 132 (Tex.Cr.App. 1979); *Day v. State*, 532 S.W.2d 302, 306 (Tex.Cr.App. 1976). This is particularly true when, as is the case here, Appellant made a proper and timely request for such a charge. *Warren v. State, supra*, at 934; see also *Barton v. State*, 172 Tex.Cr.R. 600, 361 S.W.2d 716 (1962).[16]

The Appellant explained that he feared that his wife might expose the boys to Douglas Gillingham or A. G., based upon her lying to the SAPCR court about continuing to live with the man, her minimizing attitude about the severity and extent of the abuse, her disbelief that Douglas Gillingham had choked S. H., and her unwillingness to discuss these issues or listen to the new information that had been revealed in counseling. Had he been in a position where he was being forcibly removed to a place where he would be endangered, as the boys were, he

---

[16]*Hayes v. State*, 728 S.W.2d 804, 807 (Tex. Crim. App. 1987).

would have been entitled to use force to prevent the removal.[17]  And finally, it was immediately necessary because Ms. Gillingham was about to leave with the boys.  Thus, the evidence raised the defense.  Even if the jury ultimately did not accept the defense, the Appellant was entitled to have the jury, not the court, make that decision.  The court again denied Appellant the right to place this evidence before the jury, thus overruling his request.

**The State's complaint.**

The State complains that the Court of Appeals has misinterpreted the law of self defense and defense of a third person.  The first complaint is that the Appellant's statement of the imminent danger he perceived was not sufficient to raise an issue of defense of a third person.[18]  While Appellant agrees that the standard for making this decision set forth in *Shaw v. State*[19], the State misapplies the standard

---

[17]*See* TEX. PENAL CODE, §9.31.

[18]State's Brief on the Merits (hereafter State's Brief) p. 13.

[19]*Shaw v. State,* 243 S.W.3d 647, 657 (Tex. Crim. App. 2007).

to the evidence in this case.[20]

In *Shaw*, the defendant, who was not trained in the medical arts, aggressively administered CPR to her grandson. In the initial report of the doctor who examined the boy, he found that the fatal head injury could have been caused by aggressive CPR. The defendant asked for an instruction on the "Good Samaritan Defense."[21] While this Court did not dispute that there was prima facie evidence of the elements of the defense, it found that, because the defense is in the nature of a confession and avoidance defense, and because there was no evidence of a culpable mental state when the defendant administered CPR, she

---

[20]On page 14 of the State's Brief, the State quotes this Court in *Shaw* as follows: "To prevent this, the trial court 'must rely on its own judgment, formed in the light of its own common sense and experience, as to the limits of rational inference from the facts proven.'" The use of the word "proven" in this context is ill advised. All the prima facie case must provide is some evidence from which the finder of fact may rationally conclude that there is at least a reasonable doubt that the defensive element exists.

[21](k) It is a defense to prosecution under this section that the act or omission consisted of:

> (1) reasonable medical care occurring under the direction of or by a licensed physician; or
>
> (2) emergency medical care administered in good faith and with reasonable care by a person not licensed in the healing arts.

TEX. PENAL CODE § 22.04(k)(1)(B).

11

was not entitled to the defense.[22]

In a similar vein, the cases cited in *Shaw* as precedence also turn on whether all the elements necessary to believe the defense are present at all in the evidence. In *Richardson v. State*[23] the defense instruction requested was entrapment. The Court found the record was devoid of any suggestion that law enforcement had induced the defendant possess marijuana. In *Garcia v. State*[24] the Court found that the defendant's testimony that he had been advised by law enforcement that his murder was sought by another and that he should protect himself was evidence that he was induced to violate the law against carrying a firearm.[25]

The State suggests that the defendant's testimony alone is not enough to support a rational finding by a jury in support of the defense.[26] In this instance, in his bill of review, the Appellant

---

[22]*Shaw, supra* at 659.

[23]*Richardson v. State*, 622 S.W.2d 852, 856 (Tex. Crim. App. 1981).

[24]*Garcia v. State*, 528 S.W.2d 604, 605 (Tex. Crim. App. 1975).

[25]*Id.*

[26]State's Brief p. 18.

explained his fear and his reasons for that fear; his ex-wife's and her chaperone's indifference to the concern, and his ex-wife's willingness to commit perjury to cover up her disobedience to the SAPCR court's orders. The State describes this testimony as conclusory, but that simply is not so. The Appellant detailed what he feared would happen and why he feared it would happen. He made these statements under oath. If, as the State suggests, his testimony is not enough to create a prima facie evidence of the elements of the offense because it came from the defendant, then they are suggesting a *de jure* rule that the testimony of the defendant be treated differently from that of other witnesses merely because he is the defendant. If that were the law, it would surely be a violation of due process.[27]

*The undefined terms.*

Terms that are not defined by statute are given their common meaning.[28] The State engages in an analysis of non-statutorily defined terms in the self defense and defense of a third person statutes,

---

[27]*Rock v. Arkansas*, 483 U.S. 44, 51, 107 S.Ct. 2704, 2708-09 (1987); *Hebert v. State*, 836 S.W.2d 252, 255 (Tex. App. 1992).

[28]*Clinton v. State*, 354 S.W.3d 795, 800 (Tex. Crim. App. 2011).

purporting to show that the Appellant is not entitled to the defense of defense of a third person.[29]

"Other."

While the Corpus Christi Court of Appeals did say in *Macias v. State*[30] that the term in the statute logically refers to the other who is threatening the use of unlawful force, it should also be noted that *Macias* is an unreported opinion and this suggestion has not been approved by this Court. Further, if the legislature had intended to so limit the term other, it could have done so by adding the phrase, "threatening or using unlawful force."

Moreover, the State is simply trying to divert attention from the forcible act that was being committed by Brandy Gillingham. She was taking the boys from the defendant, possibly to a location where they would be exposed to Douglas or A. G.

"Unlawful force."

---

[29]State's Brief, pp. 14-21.

[30]*Macias v. State*, 2015 Tex. App. LEXIS 2319 *18 (Tex. App. Corpus Christi Mar. 12, 2015).

14

The Penal Code defines "unlawful" as being criminal or tortious.[31] Had the Appellant been the person in the car and he believed that he was being taken to a place where he would be exposed to harm, he would clearly have been entitled to use the force necessary to extricate him from the car. Appellant believed, in light of the indifference shown by both Brandy and her mother, that this was precisely what was in store for his sons. Taking a person against their free will to a place of danger would surely constitute criminal or tortious conduct.[32] S. H. and J. H. were minors to whom we do not afford the free volition to resist the directions of their parents.

"Force," on the other hand, is a word of common usage, not defined by statute. It has many definitions when used as a noun, as it is here. One definition is: "Strength or energy as an attribute of physical action or movement."[33] It is also defined as: "Coercion or

---

[31]TEX. PENAL CODE §1.07(48).

[32]Arguably, the removal of the boys from Appellant's custody was an unlawful restraint under TEX. PENAL CODE §20.02. Brandy would have had a defense to such a charge as a relative of the minor children trying to take lawful custody, but the existence of a defense does not alter the potentially unlawful character of the conduct.

[33]OXFORD U. S. ENGLISH DICTIONARY; Oxford University Press, 2015.

compulsion, especially with the use or threat of violence."[34] The moving or restraining of someone against their will is clearly contemplated in the meaning of unlawful force in the self defense statute, because it is one of the situations in which the immediate need for force is presumed:

> The actor's belief that the force was immediately necessary as described by this subsection is presumed to be reasonable if the actor: (1) knew or had reason to believe that the person against whom the force was used: . . . unlawfully and with force removed, or was attempting to remove unlawfully and with force, the actor from the actor's habitation, vehicle, or place of business or employment.[35]

"Immediately necessary"

While Appellant does not dispute the common usage asserted by the State for these words in the State's Brief, p. 17, Appellant disagrees with the State's concept of the harm to be avoided. It is not and was not (at least immediately) the actions of Douglas or A. G., but rather the removal from Appellant's care of two small boys whose mother and grandmother were indifferent to the danger in which they were likely placing the boys if exposed to Douglas or A. G.

---

[34]*Id.*

[35]Tex. Penal Code § 9.31(a)(1)(B).

The State makes reference to the defense of necessity, pointing out its similarity to defense of a third person.[36] The State acknowledges the necessity defense adds the term "imminent harm" and acknowledges the grammatical difference between "immediately necessary" and "imminent harm." However, the State then seeks to equate them with the observation that when there is an imminent harm action to avoid it is immediately necessary. However, what the State does not address is that the same is not so certain if you reverse order. An action may be, as here, immediately necessary, yet the harm may not be so imminent. The Court of Appeals found the leaving with the boys to be the act that created an immediate necessity, even though the feared harm might not be imminent.[37]

Finally, it should be remembered that all of these definitions are viewed in the light most favorable to the defense[38] and from the actor's point of view.[39] The Appellant explained in detail why he thought his

[36]State's brief, pp. 17-18.

[37]*Henley v. State, supra* at 116.

[38]*Ferrel v. State*, 55 S.W.3d 586, 591 (Tex. Crim. App. 2001).

[39]*Ex parte Drinkert*, 821 S.W.2d 953, 955 (Tex. Crim. App. 1991).

17

sons were in danger if they left with his ex-wife and former mother in law. He had new information which led him to believe that Douglas and A. G. presented a greater danger to the boys than Brandy had acknowledged or accepted. Her refusal to listen to him, to be informed of new corroborative information, reasonably led him to believe that the SAPCR court's orders would not be obeyed. After all, Brandy perjured herself in order to continue breaking one of the SAPCR court's orders; that she stop living with Douglas.[40] Clearly, she did not take the threat her boyfriend posed to her children seriously.

**Response No. 2: The exclusion of evidence that was basic to the Appellant's right to confrontation and cross-examination, while related to the defense of a third person, is an independent ground for sustaining the ruling of the Court of Appeals.**

The State does not fully address the fact that the Court of Appeals ruled that the exclusion of all of the evidence about the ongoing custody fight and was a violation of the Appellant's right to confrontation and cross examination.

> In his second issue, Appellant argues that the trial court improperly limited his right to cross-examine and confront the witnesses against him by not allowing him to question

---

[40]5 RR 86.

Brandy and her mother about the new allegations that had emerged during the children's counseling concerning abuse during Brandy's times of possession. We agree and hold that the trial court so erred.[41]

Even if Appellant were not entitled to the defense of a third person defense, he was still entitled to impeach Brandy. A substantial part of her motivations to testify as she did against the Appellant were basically unrevealed. The State was allowed to sanitize their complainant and even to argue, falsely, that there was no excuse for Appellant's attack on Brandy.[42]

Appellant's right to a new trial based on this violation of his rights under the 6th Amendment[43] should not be disturbed. As the Court of Appeals pointed out, the right to present the defense of a third person defense and the right to confront and cross examine the complainant overlap, but both were errors of constitutional dimension.

In his second issue, Appellant argues that the trial court improperly limited his right to cross-examine and confront the witnesses against him by not allowing him to question Brandy and her mother about the new allegations that had

---

[41]*Henley v. State*, *supra* at 116 (Tex. App. 2014).

[42]5 RR 128,135.

[43]USCS Const. Amend. 6.

19

emerged during the children's counseling concerning abuse during Brandy's times of possession. We agree and hold that the trial court so erred.

Appellant correctly argues that denial of the right of confrontation and cross-examination is an error of constitutional magnitude.  And the trial court's error here was exacerbated by the State's jury argument.[44]

Even if the Court should rule that Appellant was not entitled to the defense of a third person, depriving him of the right to effectively cross examine Brandy and her mother constitutes an independent ground for reversing the trial court not complained of by the State.

## PRAYER

In accordance with the foregoing arguments and authorities, the Appellant prays the court will affirm the Court of Appeals.

Respectfully submitted,

WILLIAM S. HARRIS
Attorney and Counselor at Law
307 West 7th Street, Suite 1905
Fort Worth, Texas 76102
Phone: (817) 332-5575
Faxed: (817) 335-6060

---

[44]*Henley v. State, supra* at 116 (Tex. App. 2014).

Email: wmsharris.law@sbcglobal.net


By: /S/ Wm. S. Harris
William S. Harris
State Bar No. 09096700

Attorney for Gregory Shawn Henley


## CERTIFICATE OF SERVICE

I certify that a true copy of the foregoing has been served on Mr. John R. Messinger, Assistant State's Attorney, and on Ms. Debra Windsor, Assistant Criminal District Attorney, by use of the electronic filing systems service function.

Signed this the 17th day of August, 2015.


/S/ Wm. S. Harris
William S. Harris

## CERTIFICATE OF COMPLIANCE

I certify that the Word Perfect word count tool for this document is 3882.

/S/ Wm. S. Harris
William S. Harris