

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

## No. 02-19-00216-CR

———————————————————

## EX PARTE TONYA COUCH

---

On Appeal from Criminal District Court No. 2
Tarrant County, Texas
Trial Court No. CDC2-C009633-00

---

Before Birdwell, Bassel, and Womack, JJ.
Opinion by Justice Birdwell

# OPINION

Tonya Couch appeals from an order denying her pretrial application for habeas relief. In three points, she contends that the trial court should have dismissed indictments pending against her in four trial court cause numbers because the statute under which she has been charged—Penal Code Section 34.02(a)(4)—is facially unconstitutional under the First, Eighth, and Fourteenth Amendments of the United States Constitution. *See* U.S. Const. amends. I, VIII, XIV. We affirm.

## Procedural Background

In four different trial court cause numbers, Couch is charged with money laundering. In number 1457264, the State charged her with

> knowingly financ[ing] or invest[ing] or intend[ing] to finance or invest funds of $30,000 or more but less than $150,000, that Tonya Couch believed were intended to further the commission of criminal activity: namely hindering apprehension of Ethan Couch, an individual having engaged in delinquent conduct that violated a penal law of a grade of felony.

In numbers 1596597 and 1597467, the State charged her with "knowingly financ[ing] or invest[ing] or intend[ing] to finance or invest funds of $30,000 or more but less than $150,000, that [Tonya Couch] believed were intended to further the commission of criminal activity, to-wit: hindering apprehension." And finally, in number 1598847, the State charged her with

> [k]nowingly financ[ing] or intend[ing] to finance funds of $30,000 or more but less than $150,000 that [Tonya Couch] believed were intended to further the commission of criminal activity, to-wit: hindering apprehension of Ethan Couch, by withdrawing funds in cash in the

2

amount of $30,000 from JPMorgan Chase Bank to finance the travel of [Tonya Couch] and Ethan Couch to Mexico.

Couch filed an application for writ of habeas corpus and an amended application for writ of habeas corpus, seeking dismissal of all four indictments. Couch contended in the trial court, as she contends on appeal, that Penal Code Section 34.02(a)(4), under which she was charged in all four indictments, is facially unconstitutional because "by forbidding the mere intent to finance or invest funds intended to further the commission of criminal activity," it "creates a thought crime" in violation of the First, Eighth, and Fourteenth Amendments of the United States Constitution. After a nonevidentiary hearing, the trial court denied the application.

## Standard of Review

A pretrial habeas application is "generally not available to test the sufficiency of the charging instrument or to construe the meaning and application of the statute defining the offense charged." *Ex parte Perry*, 483 S.W.3d 884, 895 (Tex. Crim. App. 2016). But an applicant contending that the statute under which she was charged is facially unconstitutional may bring such a challenge. *Id.*; *Ex parte Weise*, 55 S.W.3d 617, 620 (Tex. Crim. App. 2001). Usually, a facial-constitutionality challenge can succeed only if the applicant shows that the law is unconstitutional in all its applications. *Ex parte Ellis*, 309 S.W.3d 71, 79–80 (Tex. Crim. App. 2010); *cf. State v. Doyal*, 589 S.W.3d 136, 145 (Tex. Crim. App. 2019) ("[A] facial vagueness challenge to a statute

3

that implicates First Amendment freedoms does not require a showing that there are no possible instances of conduct clearly falling within the statute's prohibitions.").

## Analysis

Although a habeas application is generally not available to construe a statute's meaning and application, in this instance we must construe subsection (a)(4)'s meaning to determine Couch's facial-constitutionality challenge. *See United States v. Williams*, 553 U.S. 285, 293, 128 S. Ct. 1830, 1838 (2008).

### Statutory-construction principles

In construing statutes, we presume that the Legislature intended to comply with the United States and Texas Constitutions and to effect a just and reasonable result. Tex. Gov't Code Ann. § 311.021(1), (3). When interpreting statutory language, we focus on the collective intent or purpose of the legislators who enacted the legislation. *Hughitt v. State*, 583 S.W.3d 623, 626 (Tex. Crim. App. 2019). To determine the Legislature's collective intent, we look first to the literal text, which usually provides the best means to determine its "fair, objective meaning . . . at the time of its enactment." *Clinton v. State*, 354 S.W.3d 795, 800 (Tex. Crim. App. 2011). We construe the statute's words according to their plain meanings and grammar and usage rules, presuming that every word has been used for a purpose and that each word, clause, and sentence should be given effect if reasonably possible. *Hughitt*, 583 S.W.3d at 627. But when statutory language is ambiguous or imposing the plain meaning would cause

an absurd result, we may consider extratextual factors, such as legislative history. *Clinton*, 354 S.W.3d at 800.

In the context of constitutional challenges to statutes, the Texas Court of Criminal Appeals has explained that

> [t]he federal constitution affords the states broad authority to narrowly construe a statute to avoid a constitutional violation. We have held that Texas courts have a duty to employ a reasonable narrowing construction for that purpose. But this Court and the Supreme Court have both held that a narrowing construction should be employed only if the statute is readily susceptible to one. We may not rewrite a statute that is not readily subject to a narrowing construction because such a rewriting constitutes a serious invasion of the legislative domain and would sharply diminish the legislature's incentive to draft a narrowly tailored statute in the first place.
>
> We have indicated that a law "is not susceptible to a narrowing construction when its meaning is unambiguous." This statement accords with our longstanding practice of giving effect to the plain meaning of a statute unless the language is ambiguous or the plain meaning leads to absurd results that the legislature could not have possibly intended. It also accords with our more recent statements that a statute is ambiguous if the statutory language "is reasonably susceptible to more than one understanding."

*Ex parte Thompson*, 442 S.W.3d 325, 339–40 (Tex. Crim. App. 2014) (footnotes omitted). In other words, if an ambiguous statute is capable of a construction that sustains its validity, we will give the statute that interpretation. *See Ex parte Granviel*, 561 S.W.2d 503, 511 (Tex. Crim. App. 1978).

**First Amendment protections**[1]

The First Amendment protects freedom of thought. *Thompson*, 442 S.W.3d at 338. Banning protected expression, such as thought, on a content basis is unconstitutional. *See id.* As the United States Supreme Court has recognized, "The government 'cannot constitutionally premise legislation on the desirability of controlling a person's private thoughts.' First Amendment freedoms are most in danger when the government seeks to control thought or to justify its laws for that impermissible end. The right to think is the beginning of freedom . . . ." *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 253, 122 S. Ct. 1389, 1403 (2002) (citation omitted). But when a statute that implicates protected expression contains an intent element to do something that, if accomplished, would be unlawful and outside of First Amendment protection, the existence of that intent element might alleviate First Amendment concerns. *Thompson*, 442 S.W.3d at 337–38. "[I]t is the specific type of intent that matters." *Id.* at 337.

**Penal Code Section 34.02(a)(4)**

Section 34.02(a)(4) of the Penal Code provides that "[a] person commits an offense if the person knowingly[] . . . finances or invests or intends to finance or invest funds that the person believes are intended to further the commission of criminal activity." Tex. Penal Code Ann. § 34.02(a)(4). This subsection sets forth three

---

[1]Couch's Eighth and Fourteenth Amendment arguments in her second and third points are premised on the same contention in her First Amendment argument that subsection (a)(4) punishes thought.

manner and means of committing the offense of money laundering[2]: (1) knowingly financing funds the person believes are intended to further the commission of criminal activity; (2) knowingly investing funds the person believes are intended to further the commission of criminal activity; and (3) knowingly intending to finance or invest funds the person believes are intended to further the commission of criminal activity. *Id.*; *cf. Deschenes v. State*, 253 S.W.3d 374, 380 (Tex. App.—Amarillo 2008, pet. ref'd) (describing essential elements of money laundering under Penal Code Section 34.02(a)(1)).

---

[2]Subsection (a)(4) expands upon the traditional definition of money laundering—"the process through which the existence, illegal source, true ownership, or unlawful application of illicitly derived funds, proceeds, currency, or cash is concealed or disguised to make the funds appear legitimate, thereby helping to evade detection, prosecution, seizure, or taxation"—to include the use of legitimately derived funds for illegitimate purposes. *See* Thomson Reuters, *Anti-Money Laundering Statutes*, 50 State Statutory Surveys: Financial Services: General, 0090 SURVEYS 16, Westlaw (Oct. 2020); *Mumford v. State*, No. 434, 2017, 2018 WL 5096074, at *1 n.22 (Del. Super. Ct. 2018) (not designated for publication) (noting that "the most common sense" of money laundering is "that the proceeds from illegal activities be transformed into other ostensibly legitimate assets in order to conceal their origin"). The only other state with a similarly worded provision in its money-laundering statute is Delaware; its provision was enacted after Texas's. Del. Code Ann. tit. 11, § 951(a)(4); *see* Act approved June 30, 2008, ch. 271, 76 Del. Laws (2007–2008), https://delcode.delaware.gov/sessionlaws/ga144/index.shtml; Act of May 30, 2005, 79th Leg., R.S., ch. 1162, § 2, 2005 Tex. Gen. Laws 3802, 3803. We have found no Delaware authority addressing Couch's issue in relation to its money-laundering statute. But the federal money-laundering statute contains a similar provision providing for the conviction of a person who "with the intent to promote the carrying on of specified unlawful activity . . . conducts or attempts to conduct a financial transaction involving . . . property used to conduct or facilitate specified unlawful activity." 18 U.S.C.A. § 1956(a)(2)(A), (3)(A).

**Couch's and State's contentions**

Couch contends that this entire subsection of the statute is unconstitutional because by criminalizing the intent to finance or invest funds the person believes are intended to further the commission of criminal activity, the subsection punishes mere thought in violation of the United States Constitution.[3] Couch argues that this part of subsection (a)(4) has two mens rea but fails to define an actus reus and instead punishes a person merely for forming an intent to perform an act—a thought rather than an action. *See* Tex. Penal Code Ann. § 6.01(a) ("A person commits an offense only if he voluntarily engages in conduct, including an act, an omission, or possession."); *Ramirez-Memije v. State*, 444 S.W.3d 624, 627 (Tex. Crim. App. 2014) (noting that an offense must have an actus reus); *see also United States v. Sanchez*, 667 F.3d 555, 561 (5th Cir. 2012) ("[T]he *actus reus* requirement exists in order to ensure

---

[3]Couch does not challenge the constitutionality of subsection (a)(4)'s prohibition on knowingly financing or knowingly investing funds that the person believes are intended to further the commission of criminal activity, nor does she explain why we should hold the entire subsection unconstitutional and dismiss all of the indictments because of her challenge to a single described manner and means of committing the offense. *See Salinas v. State*, 523 S.W.3d 103, 110 (Tex. Crim. App. 2017) ("[I]t is possible for only a portion of a statute to be facially unconstitutional, and if that is the case, the court should invalidate only that portion, leaving the remainder of the statute intact, so long as doing so would be feasible."); *see also* Tex. Gov't Code Ann. § 311.032(c) (providing that when a statute does not expressly mention severability or nonseverability, and any part of "the statute or its application to any person or circumstance is held invalid, the invalidity does not affect other provisions or applications of the statute that can be given effect without the invalid provision or application, and to this end the provisions of the statute are severable.").

8

that a criminal defendant cannot be punished unless he undertakes some act in furtherance of his criminal intent.").

The State contends that the use of the word "intends," which it argues is a verb meaning "the acting on one's intent" instead of a noun signifying a mens rea or state of mind, necessarily includes some type of "voluntary conduct in preparation of financing or investing." Thus, according to the State, subsection (a)(4) does not implicate any of the constitutional provisions raised by Couch because a proper construction of the "knowingly intends to finance or invest" manner and means in Section 34.02(a)(4) shows that it criminalizes preparatory actions taken with criminal intent rather than mere thoughts. In other words, the State contends that a proper reading of subsection (a)(4) is as follows: "A person commits an offense if the person [1] knowingly[] [2] finances or invests or . . . [engages in conduct that is more than mere preparation to finance or invest that tends but fails to effect financing or investing] [3] funds [4] the person believes are intended to further the commission of criminal activity." *See* Tex. Penal Code Ann. § 15.01(a) ("A person commits an offense if, with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended."), (d) ("An offense *under this section* is one category lower than the offense attempted, and if the offense attempted is a state jail felony, the offense is a Class A misdemeanor.") (emphasis added); *see also id.* § 15.05 ("Attempt . . . to commit . . . a preparatory offense defined in this chapter is not an offense.").

9

We agree with the State that the Legislature did not intend to punish mere thought under Section 34.02(a)(4), but we base our conclusion on different reasoning than the State's.

**Section 34.02(a)(4) does not implicate the First Amendment**

We cannot agree with the State's plain-language argument. Black's Law Dictionary defines the verb "intend" as "[t]o have in mind a fixed purpose to reach a desired objective; to have as one's purpose"; "[t]o contemplate that the usual consequences of one's act will probably or necessarily follow from the act, whether or not those consequences are desired for their own sake;" or "[t]o signify or mean." *Intend*, Black's Law Dictionary (11th ed. 2019). Contrary to the State's argument, none of these definitions describes or includes the taking of any action; instead, all these definitions describe thoughts or a state of mind. For example, to use the first definition, the indictments charge Couch with knowingly "having in mind a fixed purpose to reach a desired objective," i.e., to finance or invest funds to further the offense of hindering apprehension. Or to use the second definition, they charge her with knowingly "contemplat[ing] that the usual consequences of [the] act [of financing or investing funds for the purpose of hindering apprehension] will probably or necessarily follow from [that] act." Either way, by alleging that she knowingly intended to finance or invest funds, the indictments do not allege any specific act taken in furtherance of the formulated purpose or objective "in mind" or "contemplate[d]."

The State cites the definition of intend in the sixth edition of Black's Law Dictionary: "to design," "to resolve," or "to propose," arguing that these definitions encompass "voluntary conduct in preparation of financing or investing." But while designing or proposing to do something could involve action, it could also involve thoughts only. The State gives no description of what kind of voluntary conduct would be included in those definitions. Thus, we are not convinced by the State's plain-language argument.

On the other hand, Couch's interpretation—that the phrase "knowingly . . . intends to finance or invest" unambiguously evidences the contrary, i.e., an intent to punish the mere formulation of a thought—does not fit in context with the remainder of Penal Code Section 34.02(a), which prohibits numerous listed types of *conduct* in furtherance of criminal activity. Nor is it consistent with a presumption that the Legislature enacted Section 34.02(a)(4) with full knowledge of what the law requires; in this instance, that includes that the law requires an actus reus. *See Garcia v. State*, 112 S.W.3d 839, 846 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (citing *Acker v. Tex. Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990)); *Young v. State*, 95 S.W.3d 448, 451 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (same).

In light of the overall statutory context of Penal Code Section 34.02(a), as well as the presumption that the Legislature intended a constitutional as well as a just and reasonable result, we conclude that the phrase "intends to finance or invest" in

subsection (a)(4) is ambiguous. Therefore, we employ extratextual factors to discern legislative intent. *See Clinton*, 354 S.W.3d at 800.

The Legislature added subsection (a)(4) to Section 34.02 in 2005. The engrossed and enrolled bill analyses describe the change as follows: "Provides that a person commits an offense if the person knowingly *commits certain actions*, including financing or investing or intending to finance or invest funds that the person believes are intended to further the commission of criminal activity." S. Research Ctr., Bill Analysis, Tex. H.B. 3376, 79th Leg., R.S. (2005) (engrossed and enrolled versions) (emphasis added). Describing the amendment another way, the enrolled bill summary provides that "[t]he bill expands the offense of money laundering to apply to a person who *conducts or intends to conduct the financing or investment of funds* intended for use in criminal activity." Enrolled Bill Summary, Tex. H.B. 3376, 79th Leg., R.S. (2005) (emphasis added). This history shows that the Legislature was concerned with punishing conduct and actions rather than mere thoughts.

We also find guidance in the Court of Criminal Appeals's construction of the similarly used phrase "finances or invests" in Health and Safety Code Section 481.126(a) (the "illegal investment statute"), related to the use of funds to facilitate certain drug offenses. Tex. Health & Safety Code Ann. § 481.126(a). That section provides that a person commits an offense if the person knowingly or intentionally "finances or invests funds the person knows or believes are intended to further the commission of" enumerated drug offenses. *Id.* § 481.126(a)(3), (4). In response to the

12

argument that the illegal investment statute requires evidence of an actual transfer of funds to support conviction, the Court of Criminal Appeals held that "finances or invests" does not require proof of a completed financial transaction, i.e., an actual transfer of funds; instead, it requires a showing only of actions indicating "the intent to finance or invest" funds for an illegal drug-related purpose. *Rezapour v. State*, 817 S.W.2d 67, 69 (Tex. Crim. App. 1991); *Jordan v. State*, 816 S.W.2d 89, 91–92 (Tex. Crim. App. 1991) ("Although the funds in the case before us had not changed hands, the money had been 'raised' and 'commit[ted]' by agreement for the purpose of gaining possession of cocaine."); *see also Sauceda v. State*, 859 S.W.2d 469, 471 (Tex. App.—Dallas 1993, pet. ref'd) ("It is enough if the funds were both present at the scene of the crime and displayed for the express purpose of purchasing the contraband."); *Tanner v. State*, 838 S.W.2d 302, 305 (Tex. App.—El Paso 1992, no pet.) (rejecting argument that the illegal investment statute is facially overbroad "because it reaches expressions not intended to further the sale, distribution[,] or possession of narcotics," holding that "[t]he penal provision at issue criminalizes *only the conduct* of one who intends to invest or finance funds intended to further the commission of an aggravated drug offense" (emphasis added)). In so holding, the court construed the plain meaning of "finance" to include not only the providing of a certain amount of identified funds to purchase illegal drugs but also the raising of such funds for that purpose—regardless of whether the raised funds were actually expended—and it construed the plain meaning of invest to include actions showing a

commitment of identified funds for a certain purpose to obtain a financial return. *See Jordan*, 816 S.W.2d at 92.

In most of the cases construing the illegal investment statute, the defendants had verbally committed to purchase drugs for a certain amount and had arrived at the agreed-upon location with the agreed-upon amount but were arrested before the identified amount of money and drugs were exchanged. *See Rezapour*, 817 S.W.2d at 68; *Jordan*, 816 S.W.2d at 90–91; *Sauceda*, 859 S.W.2d at 470–71; *see also Howard v. State*, 890 S.W.2d 514, 516–18 (Tex. App.—Beaumont 1994, no pet.) (affirming conviction of Howard as party to illegal investment—for setting up $47,500 drug deal with potential buyers and undercover police officer—even though Howard "himself had no money to expend or invest in the purchase of the 52 pounds of marijuana"). In *Jordan*, the Court of Criminal Appeals rejected the intermediate court of appeals's holding that the State had proven only an attempted offense; instead, it applied the definition of finance or invest set forth above to hold that the State need only prove *conduct* showing that funds were intentionally or knowingly "raised" for or "committed" for the proscribed illegal purpose. 816 S.W.2d at 92. Thus, for purposes of the illegal investment statute, conduct showing an intent to finance or invest is not merely evidence of an attempted offense. *See id.*

Presuming, as we must, that the Legislature enacted Section 34.02(a)(4) with knowledge of the Court of Criminal Appeals's construction of the phrase "finances or invests" in the illegal investment statute, we conclude that the Legislature included the

14

phrase "intends to finance or invest" to foreclose the similar argument made regarding the illegal investment statute, in other words, to make clear that *conduct* indicating an intent to finance or invest—regardless of whether the raised or committed funds are actually expended in whole or in part—is expressly prohibited by Section 34.02(a)(4). This construction aligns with the legislative intent and the statute's context, defines an actus reus, and avoids violating the Constitution.[4]

Because Section 34.02(a)(4) is susceptible of a construction that provides an actus reus for the phrase "intends to finance or invest," we conclude that it is not unconstitutional for punishing mere thoughts and, therefore, that it is not facially unconstitutional.

---

[4]The similar provision in the federal money-laundering statute expressly provides that a person is criminally liable if he "conducts or attempts to conduct" a prohibited financial transaction. 18 U.S.C.A. § 1956(a)(3). Thus, the federal statute likewise does not require an actual transfer of funds for criminal liability thereunder. *See U.S. v. Loehr*, 966 F.2d 201, 203 (6th Cir. 1992) ("In order to prove that a criminal offense was an attempt within the meaning of the statute here in issue, the government must prove that the individual charged intended to engage in the proscribed criminal activity and that the accused performed an overt act in furtherance of the criminal act proscribed by the statute. The degree of a defendant's performance of a substantial act in furtherance of the illegal activity is a factual issue to be resolved according to the circumstances of each particular case." (citation omitted)).

## Conclusion

Having determined that Section 32.04(a)(4) is not facially unconstitutional, we overrule Couch's three points and affirm the trial court's order.

/s/ Wade Birdwell

Wade Birdwell
Justice

Publish

Delivered:  February 25, 2021

16