

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-21-00566-CR

Johnny Gabriel **LAZALDE**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 226th Judicial District Court, Bexar County, Texas
Trial Court No. 2019-CR-8681
Honorable Velia J. Meza, Judge Presiding

Opinion by:     Irene Rios, Justice

Sitting:     Irene Rios, Justice
             Liza A. Rodriguez, Justice
             Sandee Bryan Marion, Chief Justice (Ret.)[1]

Delivered and Filed: October 11, 2023

REVERSED AND REMANDED

Appellant Johnny Gabriel Lazalde appeals his conviction for unlawfully carrying a weapon

on premises licensed or permitted by the State to sell alcoholic beverages, a then third-degree

felony offense. *See* Act of May 24, 2017, 85th Leg., R.S., ch. 1049, § 4, sec. 46.02; Act of May

23, 2007, 80th Leg., R.S., ch. 693, § 1, sec. 46.02; Act of June 1, 1997, 75th Leg., R.S., ch. 1261,

---

[1] Sitting by assignment pursuant to section 74.003(b) of the Texas Government Code.

§ 24, sec. 46.02 (hereinafter referred to as "Former Section 46.02").[2] We reverse the trial court's final judgment and remand for further proceedings consistent with this opinion.

## BACKGROUND

In January of 2019, Lazalde was arrested for driving without a valid license after parking his car on a sidewalk and walking towards the entrance of a convenience store that sold alcoholic beverages. Law enforcement recovered a handgun from a holster on Lazalde's ankle while conducting a search incident to his arrest and then charged Lazalde with the misdemeanor offense of unlawfully carrying a weapon. *See* Former Section 46.02(a). Lazalde was then subsequently indicted and tried for the felony offense of unlawful carrying a weapon on premises licensed or permitted by the State to sell alcoholic beverages. *See id.* 46.02(a), (c).

At trial, Lazalde objected to the proposed definition of "premises" in the jury charge and requested a different definition of "premises" that excluded the sidewalk and entrance area immediately outside the convenience store. The trial court denied his objection and request. The jury convicted Lazalde of the felony offense. *See id.* The trial court sentenced Lazalde to two years in prison but suspended his sentence and placed him on community supervision for two years.

## DISCUSSION

In his first issue, Lazalde asserts jury charge error. In his second issue, Lazalde argues the evidence is insufficient to support his conviction. We address Lazalde's second issue first because it is a rendition issue.

---

[2] Since the time of the offense in January 2019, the legislature has significantly amended section 46.02 of the Texas Penal Code, including repealing Former Section 46.02(c) in 2021, the subsection under which Lazalde was convicted. *See* Act of May 24, 2021, 87th Leg., R.S., ch. 809, §§ 22, 26(8), 28, 29.

## SUFFICIENCY OF THE EVIDENCE

### A. Standard of Review

We review the sufficiency of the evidence to support a conviction under the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). Under that standard, we view all the evidence in the light most favorable to the verdict and determine, based on that evidence and any reasonable inferences therefrom, whether any rational factfinder could have found the essential elements of the offense beyond a reasonable doubt. *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013) (citing *Jackson*, 443 U.S. at 318–19). The jury is the sole judge of the credibility and weight to be given to the testimony of the witnesses. *Id*. In this role, the jury may choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

### B. Hypothetically Correct Jury Charge

In determining whether the evidence is legally sufficient, we must compare the evidence produced at trial to "'the essential elements of the offense as defined by the hypothetically correct jury charge.'" *David v. State*, 663 S.W.3d 673, 678 (Tex. Crim. App. 2022) (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "A hypothetically correct jury charge 'accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *David*, 663 S.W.3d at 678 (quoting *Malik*, 953 S.W.2d at 240). "The 'law as authorized by the indictment' includes the statutory elements of the offense . . . as modified by the charging instrument." *David*, 663 S.W.3d at 678 (quoting *Curry v. State*, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000)).

### C. The Elements of the Offense

In January 2019, Former Section 46.02(a) stated that a person unlawfully carried a weapon if the person "intentionally, knowingly, or recklessly carrie[d] on or about his or her person a handgun;" and the person was not on his own premises or premises under his control or inside of or directly en route to a motor vehicle or watercraft that the person owned or was under his control. *See* Former Section 46.02(a). Commission of an offense under this subsection in January 2019 was a Class A misdemeanor. *See id.* 46.02(b). However, "if the offense [was] committed on any premises licensed or issued a permit by this state for the sale of alcoholic beverages[,]" the offense was a third-degree felony. *Id.* 46.02(c).

Former Section 46.02 defined "premises" as including "real property and a recreational vehicle that is being used as living quarters, regardless of whether that use is temporary or permanent." *Id.* 46.02(a–2). The jury charge included a portion of this definition; namely, that "premises" included "real property" but further instructed the jury:

> With regard to premises licensed or issued a permit by this state for the sale of alcoholic beverages, "premises" means the grounds and all buildings, vehicles, and appurtenances pertaining to the grounds, including any adjacent premises if they are directly or indirectly under the control of the same person.[3]

*See* TEX. ALCO. BEV. CODE ANN. § 11.49(a).

When terms are not clearly defined by statute, we "may articulate a definition [of the common term] in assessing the sufficiency of the evidence[.]" *Kirsch v. State*, 357 S.W.3d 645, 651 (Tex. Crim. App. 2012); *see Green v. State*, 476 S.W.3d 440, 445 (Tex. Crim. App. 2015). In doing so, we look to the common, ordinary meaning of the word. *Williams v. State*, 270 S.W.3d 140, 146 (Tex. Crim. App. 2008); *see Medford v. State*, 13 S.W.3d 769, 771–72 (Tex. Crim. App.

---

[3] As more fully explained in the jury charge issue, we believe the trial court erred in further defining premises as it did here.

2000) (explaining that "terms not legislatively defined are typically to be understood as ordinary usage allows, and jurors may thus give them any meaning which is acceptable in common parlance"). In determining the common, ordinary meaning of a word, we may consult standard dictionaries. *See Clinton v. State*, 354 S.W.3d 795, 800 (Tex. Crim. App. 2011).

According to Black's Law Dictionary, "real property" is defined as "[l]and and anything growing on, attached to, or erected on it, excluding anything that may be severed without injury to the land." *See Property – real property*, BLACK'S LAW DICTIONARY (11th ed. 2019). A standard dictionary defines "property" as "something owned or possessed[,] *specifically*: a piece of real estate[.]" *See Property*, MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/property. "Real estate" is defined as "property in buildings and land[.]" *See Real Estate*, MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/realestate.

Moreover, Black's Law Dictionary defines "premises" as "[a] house or building, along with its ground; [especially], the buildings and land that a shop, restaurant, company, etc. uses." *See Premises*, BLACK'S LAW DICTIONARY (11th ed. 2019). Similarly, a standard dictionary defines "premises" as "a tract of land with the buildings thereon [or] a building or part of a building usually with its appurtenances (such as grounds)[.]" *See Premises*, MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/premise.

*D. The State's Evidence*

Here, San Antonio Police Officers Mical Rochford and Zachery Rodriguez testified they were on patrol together the evening of January 24, 2019, when they saw Lazalde drive his car onto and park on the public sidewalk just outside the front door of a convenience store. The store had parking spaces on both sides of the building. Because Lazalde parked on the sidewalk, Officers Rochford and Rodriguez initiated a traffic stop. Officers Rochford and Rodriguez both explained

that immediately upon the activation of the emergency lights on the patrol car, Lazalde exited his car and began walking towards the front door but did not go inside the store. According to Officer Rochford, Lazalde "made it to the door, but he never opened it or made it inside." Rather, when Officer Rochford called him, Lazalde walked away from the door and towards Officer Rochford. Officer Rochford acknowledged during cross-examination that Lazalde was "outside the door of that store, and the sidewalk, and the private walkway, or the closest he would have gotten would be the entryway" to the store before he turned around.

Officers Rochford and Rodriguez eventually detained Lazalde by placing him in handcuffs and putting him in the backseat of the patrol car because he did not keep his hands away from his pockets while the officers discussed the traffic stop with him. Soon thereafter, Officer Rochford discovered Lazalde did not have a valid driver's license and placed Lazalde under arrest for driving without a valid driver's license. Upon conducting a search incident to his arrest, the officers discovered a holstered handgun on Lazalde's ankle.

Officer Rochford testified that after finding the handgun, he further charged Lazalde with misdemeanor unlawfully carrying a weapon. *See* Former Section 46.02(a), (b). When specifically asked by the State why he charged Lazalde with the misdemeanor offense, Officer Rochford explained he charged Lazalde with the misdemeanor offense rather than felony unlawfully carrying a weapon on premises licensed or permitted by the State to sell alcohol because "when we made contact with him[,] he hadn't made it into the store yet[.]" *See id.* 46.02(c). Officer Rochford described the area in front of the door as the street where his patrol car was parked, a small shoulder next to the left of the white line on the street, a sidewalk, and then "about three feet of storefront up to the actual walls of the store." During cross-examination, Officer Rochford acknowledged an employee of the store stated she and others frequently parked in the same location Lazalde parked the night of his arrest. The footage from Officer Rodriguez's body-camera

reflects the employee coming out of the store and telling the officers that people usually drive up on the sidewalk where Lazalde parked.

Officers Rochford's and Rodriguez's body-camera footage reflects that Lazalde parked on the sidewalk very close to the building and front door, with the driver's side closest to the building. Additionally, the footage shows Lazalde near the door of the store before he turns around to speak to the officers. Noteworthy, when Officer Rodriguez informs Lazalde that he cannot drive and park on the sidewalk, Lazalde states that he parks there all the time and that he is parked on "the store's property."

Jaswinder Lalia, the convenience store's former owner, testified that the store sold alcoholic beverages at the time of Lazalde's arrest. Lalia explained the store had parking spaces on both sides of the building, but "[n]othing on the front." Lalia further explained that with respect to the front of the building, "there's a sidewalk and there's some place in front of the store that belongs to the building."

*E. Analysis*

Lazalde concedes all the elements of the offense for which he is charged except that he unlawfully carried a weapon on "any premises licensed or issued a permit by this [S]tate for the sale of alcoholic beverages." Specifically, Lazalde asserts that because he never actually went inside the store—an element Lazalde argues is required for the jury to find him guilty of the felony offense—he did not commit the offense of unlawfully carrying a weapon on premises licensed or permitted to sell alcoholic beverages.

We disagree. We do not conclude that under a hypothetically correct jury charge, the statute applicable at the time of Lazalde's offense required him to enter the store to have been found guilty of committing the felony offense. Rather, when considering the terms "real estate" and "premises" as commonly defined above, the evidence was sufficient to convict Lazalde if he was unlawfully

carrying a weapon on the convenience store's property, not just inside the store itself. Based on the officers' testimonies, the officers' body-camera footage, Lalia's testimony, and even Lazalde's statements himself, the jury's determination that Lazalde parked on the convenience store's property, exited his car on the store's property, and walked near the front entrance of the building on the store's property was not unreasonable. When viewing the totality of the evidence in the light most favorable to the jury's verdict while applying the hypothetically correct jury charge, we conclude the evidence sufficiently proves Lazalde was on the store's premises. *See Jackson*, 443 U.S. at 319; *Temple*, 390 S.W.3d at 360; *see also David*, 663 S.W.3d at 678.

In sum, a rational factfinder, having considered the evidence presented at trial, could have found beyond a reasonable doubt that Lazalde unlawfully carried a weapon on premises licensed or permitted by the State to sell alcoholic beverages as that offense existed in January 2019. *See Jackson*, 443 U.S. at 319; *see also* Former Section 46.02(a), (c). Accordingly, we overrule Lazalde's second issue.

### JURY CHARGE ERROR

Lazalde complains in his first issue that the jury charge erroneously (1) defined "premises" as "the grounds and all buildings, vehicles, and appurtenances pertaining to the grounds, including any adjacent premises if they are directly or indirectly under the control of the same person," as the term is defined by section 11.49(a) of the Texas Alcoholic Beverage Code, and (2) excluded his requested definition from former section 46.035(f)(3)[4] of the Texas Penal Code as it existed in January 2019. *See* TEX. ALCO. BEV. CODE ANN. § 11.49(a)[5]; Act of May 26, 2017, 85th Leg., R.S.,

---

[4] "'Premises' means a building or a portion of a building. The term does not include any public or private driveway, street, sidewalk or walkway, parking lot, parking garage, or other parking area." Act of May 26, 2017, 85th Leg., R.S., ch. 1143, §§ 11, 12; Act of May 18, 2017, 85th Leg., R.S., ch. 324, §§ 15.004, 15.005; Act of May 4, 2017, 85th Leg., R.S., ch. 34, § 32.

[5] We cite to the current statute because the 2019 and 2021 amendments did not amend the subsection relevant to this appeal.

ch. 1143, §§ 11, 12; Act of May 18, 2017, 85th Leg., R.S., ch. 324, §§ 15.004, 15.005; Act of May 4, 2017, 85th Leg., R.S., ch. 34, § 32 (hereinafter referred to as "Former Section 46.035(f)(3)")[6].

### A. Standard of Review

We must review "all alleged jury-charge error . . . regardless of preservation in the trial court." *Kirsch*, 357 S.W.3d at 649. In reviewing a jury charge, we first determine whether error occurred; if none occurred, our analysis ends. *Id*. However, if the charge is erroneous, then we must decide whether the appellant suffered harmed. *Wooten v. State*, 400 S.W.3d 601, 606 (Tex. Crim. App. 2013); *see Ngo v. State*, 175 S.W.3d 738, 744 (Tex. Crim. App. 2005). The standard of review we apply to assess harm depends on whether the defendant preserved error. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). If a defendant timely objects to alleged jury charge error, the error is reversible if it caused "some harm." *Id.*; *see also Jordan v. State*, 593 S.W.3d 340, 346 (Tex. Crim. App. 2020). "Some harm" means "actual harm and not merely a theoretical complaint." *Jordan*, 593 S.W.3d at 347. Harm must be evaluated in light of the complete jury charge, the arguments of counsel, the entirety of the evidence, including the contested issues and weight of the probative evidence, and any other relevant factors revealed by the record as a whole. *Wooten*, 400 S.W.3d at 606. Neither party bears the burden to show harm. *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013).

### B. Jury Charge Conference

During the jury charge conference, Lazalde objected to the trial court's inclusion of the Texas Alcoholic Beverages Code's definition of "premises." *See* TEX. ALCO. BEV. CODE ANN. § 11.49(a). Instead, Lazalde requested orally and in writing that the trial court utilize the

---

[6] Since the time of the offense in January 2019, the legislature has significantly amended section 46.035 of the Texas Penal Code, including repealing Former Section 46.035(f)(3) in 2021, the subsection Lazalde refers to during the jury charge conference. *See* Act of May 24, 2021, 87th Leg., R.S., ch. 809, § 26(10).

"premises" definition from Former Section 46.035 of the Texas Penal Code as it existed in January 2019. *See* Former Section 46.035(f)(3).[7] The trial court denied Lazalde's objection and request, indicating Former Section 46.035(f)(3) only applied to licensed handgun holders, and Lazalde did not possess a handgun license. Additionally, the trial court stated Former Section 46.02(a–2) provides its own definition of "premises" and that section 11.49(a) of the Texas Alcoholic Beverage Code addresses premises with respect to establishments licensed or permitted to sell alcoholic beverages. Thus, the trial court included the section 11.49 definition of "premises." *Compare* TEX. ALCO. BEV. CODE ANN. § 11.49(a), *with* Former Section 46.035(f)(3); *see also* Former Section 46.02(c).

Therefore, because Lazalde preserved error, we determine whether error occurred in denying Lazalde's objection or request; and if error occurred, we determine whether Lazalde suffered "some harm." *See Jordan*, 593 S.W.3d at 346.

*C. Analysis*

1. Did the trial court err?

Generally, "the jury is the exclusive judge of the facts, but it is bound to receive the law from the court and be governed thereby." TEX. CODE CRIM. PROC. ANN. art. 36.13. Hence, the trial court must give the jury a written charge "distinctly setting forth the law applicable to the case; not expressing any opinion as to the weight of the evidence, not summing up the testimony, discussing the facts or using any argument in [its] charge calculated to arouse the sympathy or excite the passions of the jury." *Id*. art. 36.14; *Green*, 476 S.W.3d at 445.

Given the restrictions the legislature has placed on the trial courts' authority to instruct juries, the Court of Criminal Appeals has cautioned trial courts to avoid defining terms that are not

---

[7] "'Premises' means a building or a portion of a building. The term does not include any public or private driveway, street, sidewalk or walkway, parking lot, parking garage, or other parking area." *See* Former Section 46.035(f)(3).

defined by statute. *Green*, 476 S.W.3d at 445. That is because "definitions for terms that are not statutorily defined are not considered to be the 'applicable law[,]' and it is thus generally impermissible for the trial court to define those terms in the jury instructions." *Id.* (citations omitted); *see also Beltran de la Torre v. State*, 583 S.W.3d 613, 617 (Tex. Crim. App. 2019) (explaining trial courts should "avoid including non-statutory instructions in the charge because such instructions frequently constitute impermissible comments on the weight of the evidence"); *Walters v. State*, 247 S.W.3d 204, 211 (Tex. Crim. App. 2007) ("[S]pecial, non-statutory instructions, even when they relate to statutory offenses or defenses, generally have no place in the jury charge."). Rather, "terms not legislatively defined are typically to be understood as ordinary usage allows, and jurors may thus give them any meaning which is acceptable in common parlance." *Medford*, 13 S.W.3d at 771–72.

At the time of Lazalde's alleged offense, Former Section 46.02 defined "premises" as "real property[.]" *See* Former Section 46.02(a–2). The legislature did not further define "real property" within this section. Additionally, Former Section 46.02(c) that elevates the offense to a felony for unlawfully carrying a weapon on premises licensed or permitted to sell alcoholic beverages does not refer to the Texas Alcoholic Beverage Code's definition of "premises." *See id.* 46.02(c). Moreover, in former sections of Chapter 46 of the Penal Code concerning offenses related to carrying weapons, the legislature either defined "premises" in those statutes or made specific references to other Penal Code sections to define "premises." *See* Act of May 24, 2017, 85th Leg., R.S., ch. 1049, § 6 (hereinafter referred to as "Former Section 46.03(c)(2)")[8]; Former Section 46.035(f)(3). Surely, if the legislature had desired to apply the definition of "premises" as provided

---

[8] Since the time of the offense in January 2019, the legislature has significantly amended section 46.03 of the Texas Penal Code, including amending Former Section 46.03(c)(2) and adding subsection 46.03(c)(4) in 2021, which effectively moves the definition of "premises" previously located in Former Section 46.035(f)(3) to current subsection 46.03(c)(4). *See* Act of May 24, 2021, 87th Leg, R.S., ch. 809, § 23.

in Former Section 46.035(f)(3), it would not have defined it within Former Section 46.02, or it would have referred to Former Section 46.035(f)(3) as it did in Former Section 46.03(c)(2). We conclude the trial court did not err in denying Lazalde's request to include the definition of "premises" as provided in Former Section 46.035(f)(3).

Nevertheless, while we conclude the trial court did not err by denying Lazalde's request to include the definition of "premises" as provided by Former Section 46.035(f)(3) of the Penal Code, the trial court included the definition of "premises" from section 11.49 of the Texas Alcoholic Beverage Code. As previously discussed, Former Section 46.02 defined "premises" without any reference to the Alcoholic Beverages Code.

Based on the legislative restrictions on instructing the jury and the Court of Criminal Appeals' reiterations cautioning the same, trial courts should avoid defining terms not defined within the statute. *See* TEX. CODE CRIM. PROC. ANN. art. 36.14; *Beltran de la Torre*, 583 S.W.3d at 617; *Green*, 476 S.W.3d at 445; *Walters*, 247 S.W.3d at 211. "Even a judge's innocent attempt to provide clarity for the jury by including a neutral instruction can result in an impermissible comment on the weight of the evidence because the instruction singles out a particular piece of evidence for special attention, which the jury may then focus on as guidance from the judge." *Beltran de la Torre*, 583 S.W.3d at 617 (citations omitted).

Because the trial court provided a specific instruction of "premises" in addition to the definition provided by the charged offense, rather than allow the jury to freely give the word its common meaning, we conclude the trial court erred by providing the definition of "premises" from the Alcoholic Beverage Code. *See* Former Section 46.02(a–2); *see also Cummins v. State*, No. 06-17-00010-CR; 2017 WL 2664442, at *2–3 (Tex. App.—Texarkana June 21, 2017, no pet.) (not designated for publication) (declining to hold the trial court erred by failing to include the "premises" definition from section 11.49 of the Alcoholic Beverage Code because Former Section

46.02 of the Penal Code provided its own definition of "premises," and distinguishing *Terry v. State*, 877 S.W.2d 68 (Tex. App—Houston [1st Dist.] 1994, no pet.).

   2.   Did Lazalde suffer harm?

As Lazalde preserved his jury charge error and we conclude the trial court erred, we next determine whether the error caused Lazalde "some harm." *See Jordan*, 593 S.W.3d at 347. "To assess harm, [under this standard,] we must evaluate the whole record, including the jury charge, contested issues, weight of the probative evidence, arguments of counsel, and other relevant information." *Id.*

The *only* disputed element at trial was whether Lazalde was unlawfully carrying the weapon on the convenience store's premises. The evidence revealed Lazalde parked on the sidewalk and area close to the front of the store, and that he walked near the entrance to the store before turning back towards the officers. However, Officer Rochford testified that he only arrested and charged Lazalde with misdemeanor unlawful carrying of a weapon rather than a felony for unlawfully carrying the weapon on a premises licensed or permitted to sell alcoholic beverages by the State because Lazalde did not go into the store.

When reviewing the entire jury charge, only a few definitions are provided. They are not in any order, including alphabetical, and the charge defines "premises" first. After providing the definition of "premises" from Former Section 46.02,[9] the charge also states in a separate paragraph,

> With regard to premises licensed or issued a permit by this state for the sale of alcoholic beverages, "premises" means the grounds and all buildings, vehicles, and appurtenances pertaining to the grounds, including any adjacent premises if they are directly or indirectly under the control of the same person.

---

[9] "'[P]remises' includes real property." *See* Former Section 46.02.

The charge also directly instructs the jury to follow the law as provided by the court within the charge.

During the State's opening statement, the State emphasized that "the case will boil down to, in a nutshell" what "premises" means. Moreover, at the beginning of the State's closing argument, while referring to the charge and the provided definition of "premises" therein, the State informed the jury that the definition provided by the charge was not made up, but rather "[i]t's coming straight from the bench. It's the law." Then, on rebuttal after Lazalde's closing, wherein defense counsel referred to Officer Rochford's testimony claiming Lazalde was not on the convenience store's premises because he never went inside the store, the State explained how the evidence matched the definition of "premises" as provided within the charge, namely that Lazalde was on the store's property—the appurtenances, meaning the area in front of the store where Lazalde parked and walked towards the store's front entrance.

Lazalde's defense hinged on the definition of "premises." Considering the entire record and the trial court's inclusion of the additional "premises" definition from section 11.49 of the Alcoholic Beverage Code, the trial court's instruction usurped the jury of its factfinding function "to consider and evaluate the evidence in whatever way they consider[ed] it relevant to the statutory offenses." *Walters*, 247 S.W.3d at 211. This, coupled with the charge further instructing the jury that "the law of the case" will be "receive[d] from the Court as contained in these instructions, and [the jury's decision shall] be governed thereby[,]" impermissibly guided the jury's understanding of the term "premises." *See Kirsch*, 357 S.W.3d at 652.

Jury charge error that affects "the very basis of the case," "deprive[s] the defendant of a valuable right," or "vitally affect[s] a defensive theory[,]" causes the defendant harm necessitating the reversal of the trial court's judgment. *See Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011) (citation and internal quotation marks omitted). The trial court's inclusion of the

additional definition of "premises" within the charge here resulted in the type of jury charge error causing "some harm." *See id.*; *see also Jordan v. State*, 593 S.W.3d at 346–47; *Wooten*, 400 S.W.3d at 606.

Accordingly, we sustain Lazalde's first issue.

#### CONCLUSION

Having overruled Lazalde's sufficiency issue but sustained his jury charge error argument, we reverse the trial court's final judgment and remand the case for further proceedings consistent with this opinion.

Irene Rios, Justice

DO NOT PUBLISH